## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                                )
KAYLA DIONNE LEWIS, et al.,                      )
                                                )
        Plaintiffs,                              )
                                                )
        v.                                       )        Civil Action No. 15-352 (RBW)
                                                )
GOVERNMENT OF THE                                )
DISTRICT OF COLUMBIA,                            )
                                                )
        Defendant.                               )
_____)

## MEMORANDUM OPINION

Kayla Dionne Lewis and Felton Hill, the named plaintiffs in this civil suit, bring this

putative class action against the defendant, the District of Columbia ("District" or "defendant"),

pursuant to 42 U.S.C. § 1983 (2012), alleging constitutional violations arising from their arrests

and subsequent detentions by the District in 2014. See generally Amended Complaint [] ("Am.

Compl."). Currently before the Court is the defendant's motion to dismiss all of the plaintiffs'

claims. Defendant District of Columbia's Motion to Dismiss Amended Complaint ("Def.'s

Mot.") at 1. After carefully considering the defendant's motion to dismiss, and all relevant

memoranda of law and exhibits attached thereto,[1] the Court concludes for the reasons that follow

that it must grant in part and deny in part the defendant's motion.

---

[1] In addition to the documents already referenced, the Court also considered the following submissions in reaching
its decision: (1) the defendant's Memorandum of Points and Authorities in Support of Defendant's Motion to
Dismiss Amended Complaint ("Def.'s Mem."); (2) the Plaintiffs' Opposition to [the] Defendant's Motion to
Dismiss (Pls.' Opp'n"); and (3) Defendant District of Columbia's Reply to [the] Plaintiffs' Opposition to [the]
Defendant's Motion to Dismiss Amended Complaint ("Def.'s Reply").

# I.    BACKGROUND

The plaintiffs assert the following in their Amended Complaint.  Plaintiff Hill was detained on Tuesday, July 8, 2014, "at about 1:10 [A.M.,] when he was arrested by the [Metropolitan Police Department] for suspicion of DUI (driving while impaired)."  Am. Compl. ¶ 56.  Plaintiff Hill was taken before the Superior Court of the District of Columbia ("Superior Court") for his presentment and a detention hearing later that same day, id. ¶ 57, supported by the submission of a <u>Gerstein</u> affidavit[2] setting forth the factual basis for his arrest, id. ¶ 58. During that hearing, the Magistrate Judge noted that the affidavit's narrative at times identified plaintiff Hill as "Mr. Ramsey."  Def.'s Mem., Exhibit ("Ex.") H (Transcript of July 8, 2014 Superior Court of the District of Columbia Proceedings in the Matter of <u>District of Columbia v. Hill</u> ("<u>Hill</u> Transcript")) at 4.[3]  Based on these inconsistencies, the Magistrate Judge continued the hearing until the next day so that the District could perfect the affidavit.  <u>Id.</u> at 5; Am. Compl. ¶ 61.  The District then transported plaintiff Hill to the District of Columbia Jail, where he was subjected to a strip search as part of the intake process.  Am. Compl. ¶¶ 62–63.  The next day, Wednesday, July 9, 2014, the District returned plaintiff Hill to the Superior Court, id. ¶ 65, and the Magistrate Judge concluded that the District "did not perfect the [G]erstein" affidavit and "ordered [plaintiff] Hill released," id. ¶¶ 66–67.

On Saturday, November 1, 2014, the Metropolitan Police Department arrested plaintiff Lewis "for suspicion of DUI (driving while impaired)."  <u>Id.</u> ¶ 43.  She was brought before the Superior Court for her presentment and a detention hearing on Monday, November 3, 2014, id. ¶

---

[2] A <u>Gerstein</u> affidavit is "filed to provide a proper basis for the judicial finding of probable cause that <u>Gerstein v. Pugh</u>, 420 U.S. 103 (1975), requires to justify restraint after an arrest."  <u>In re Holloway</u>, 995 F.2d 1080, 1083 (D.C. Cir. 1993).

[3] "The court may take judicial notice of another court's proceedings" when considering a Rule 12(b)(6) motion. <u>Donelson v. U.S. Bureau of Prisons</u>, 82 F. Supp. 3d 367, 371 (D.D.C. 2015) (citations omitted), <u>aff'd sub nom. Donelson v. Fed. Bureau of Prisons</u>, No. 15-5136, 2015 WL 9309944 (D.C. Cir. Dec. 7, 2015).

44, supported by the submission of a Gerstein affidavit setting forth the factual basis for her arrest, id. ¶ 45. The Magistrate Judge who presided over the hearing noted that the Gerstein affidavit referred to plaintiff Lewis in some places as "Ms. Jones," and in other places as "Mr. Jones." Def.'s Mem., Ex. G (Nov. 3, 2014 Superior Court for the District of Columbia Proceedings in the Matter of District of Columbia v. Lewis ("Lewis Transcript")) at 3. As a result of these defects, the Magistrate Judge continued the detention hearing until Tuesday, November 4, 2014, to permit the District an opportunity to perfect the Gerstein affidavit. Id. at 4; Am. Compl. ¶ 48 ("[T]he judicial officer ordered [the plaintiff] held until the next day . . . for a '24 Hour Gerstein perfection' to give the District an opportunity to 'perfect the Gerstein.'" (no citations in original)). Plaintiff Lewis was then transported to the District of Columbia Jail, where she was subjected to a strip search as part of the intake process. Am. Compl. ¶ 50. The following day, the District returned plaintiff Lewis to the Superior Court, and the Magistrate Judge concluded that the "government did not perfect the [G]erstein" affidavit and released plaintiff Lewis from custody. Id. ¶¶ 51–54.

## II.  STANDARD OF REVIEW

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). So to survive a motion to dismiss for "failure to state a claim upon which relief may be granted," Fed. R. Civ. P. 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556); see also Kowal v.

MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994) (plaintiff is entitled to "the benefit

of all inferences that can be derived from the facts alleged"). Although the Court must accept the

facts pleaded as true, legal allegations devoid of factual support are not entitled to this

assumption. See, e.g., Kowal, 16 F.3d at 1276. Along with the allegations made within the four

corners of the complaint, the court can also consider "any documents either attached to or

incorporated in the complaint and matters of which [it] may take judicial notice." EEOC v. St.

Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997).

### III.    ANALYSIS

A claim brought pursuant to 42 U.S.C. § 1983 "provides a remedy against 'any person'

who, under color of state law, deprives another of rights protected by the Constitution." Collins

v. City of Harker Heights, 503 U.S. 115, 120 (1992).[4] "Although a municipality[5] is a 'person'

subject to suit under § 1983 for constitutional violations, it 'cannot be held liable solely because

it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on

a respondeat superior theory.'" Singletary v. District of Columbia, 766 F.3d 66, 72 (D.C. Cir.

2014) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978)). As this Circuit has

explained,

> in considering whether a plaintiff has stated a claim for municipal liability, the
> district court must conduct a two-step inquiry. First, the court must determine
> whether the complaint states a claim for a predicate constitutional violation.

---

[4] The section states, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State
> . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any
> rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

[5] "The District of Columbia is a municipality for the purpose of § 1983." People for Ethical Treatment of Animals,
Inc. v. Gittens, 396 F.3d 416, 425 (D.C. Cir. 2005) (citation omitted).

Second, if so, then the court must determine whether the complaint states a claim that a custom or policy of the municipality caused the violation.

Baker v. District of Columbia, 326 F.3d 1302, 1306 (D.C. Cir. 2003) (citations omitted).

In assessing whether the plaintiffs' Amended Complaint satisfies this second prong, "[t]he court must determine whether the plaintiff has alleged an 'affirmative link,' such that a municipal policy was the 'moving force' behind the constitutional violation." Id. (citations omitted). There are "a number of ways a municipality can adopt a policy or custom that might create liability," Brown v. District of Columbia, 514 F.3d 1279, 1283 (D.C. Cir. 2008), including:

the explicit setting of a policy by the government that violates the Constitution; the action of a policy maker within the government; the adoption through a knowing failure to act by a policy maker of actions by his subordinates that are so consistent that they have become "custom"; or the failure of the government to respond to a need (for example, training of employees) in such a manner as to show "deliberate indifference" to the risk that not addressing the need will result in constitutional violations,

Baker, 326 F.3d at 1306 (citations omitted).

## A. Claims Pertaining to the Length of the Plaintiffs' Detentions (Claims I, II, and III)

The plaintiffs assert a number of claims against the District regarding the length of their detentions. First, they allege that the District violated the Fourth Amendment by continuing to detain them "even after a judicial finding of no probable cause." Am. Compl. ¶ 69. Similarly, plaintiff Lewis alleges that the District violated the Fourth Amendment "by holding [her for] more than [forty-eight] hours after [her] arrest without a finding of probable cause by a judicial officer." Id. ¶ 73. Lastly, both plaintiffs claim that "[t]he District violated their Eighth Amendment rights by holding them without probable cause after the administrative steps incident to their arrest had been completed without holding a bail hearing." Id. ¶ 78.

While "a policeman's on-the-scene assessment of probable cause provides legal justification for arresting a person suspected of crime," Gerstein v. Pugh, 420 U.S. 103, 113–14 (1975), "the Fourth Amendment requires a timely judicial determination of probable cause as a prerequisite to detention," id. at 126. "[A] jurisdiction that provides judicial determinations of probable cause within [forty-eight] hours of arrest will, as a general matter, comply with the promptness requirement of Gerstein." City of Riverside v. McLaughlin, 500 U.S. 44, 56 (1991). And where the arrested individual is detained for more than forty-eight hours without a judicial determination of probable cause, "the burden shifts to the government to demonstrate the existence of a bona fide emergency or other extraordinary circumstance." Id. at 57; see also Cherrington v. Skeeter, 344 F.3d 631, 644 (6th Cir. 2003) ("[T]he undisputed record establishes a violation of City of Riverside's [forty-eight]–hour rule, and [the] [d]efendants have failed to identify any emergency or other extraordinary circumstance that might take this case outside of the general rule.").

"Under Gerstein, jurisdictions may choose to combine probable cause determinations with other pretrial proceedings, . . . such as bail hearings and arraignments . . . ." Riverside, 500 U.S. at 58. The Eighth Amendment prohibits "excessive bail," U.S. Const. amend. VIII, and while the Amendment "says nothing about whether bail shall be available at all," United States v. Salerno, 481 U.S. 739, 752 (1987), "[a] prompt hearing is necessary" because "a vital liberty interest is at stake," United States v. Montalvo-Murillo, 495 U.S. 711, 716 (1990). Although the Supreme Court has not imposed a specific time-limit by which the government must conduct a bail hearing, lower courts have used Riverside's forty-eight hour limitation as a useful guidepost. See, e.g., Collins v. Ainsworth, 382 F.3d 529, 545 (5th Cir. 2004) ("There is no right to post bail within [twenty-four] hours of arrest. Mississippi law indicates that this limitation is [forty-eight]

hours."); Holder v. Town of Newton, No. 08-CV-197-JL, 2010 WL 432357, at *11 (D.N.H. Feb.

3, 2010) ("The clear import of McLaughlin, then, is that a bail hearing held within [forty-eight]

hours of a warrantless arrest is also presumptively constitutional—if indeed the Constitution

speaks to that issue."). [6]

### 1. The Duration of Plaintiff Hill's Detention

Based on the foregoing state of the law, the first three claims as to plaintiff Hill do not

pass muster. The Amended Complaint explains that he was arrested on July 8, 2014, Am.

Compl. ¶ 56, and released the following day, id. ¶ 67. As Hill was released within forty-eight

hours of his arrest, the District is "immune from systemic challenges," and Hill carries the

burden to "prove that [his] probable cause determination was delayed unreasonably," such as

"for the purpose of gathering additional evidence to justify the arrest, a delay motivated by ill

will against the arrested individual, or delay for delay's sake." Riverside, 500 U.S. at 56. The

only reason proffered by plaintiff Hill for the Court to find an unreasonable delay is that the

judicial officer affirmatively concluded at his initial appearance that the government lacked

probable cause to effect the arrest. Am. Compl. ¶ 60 ("The judicial officer held that the Gerstein

[affidavit] did not establish probable cause."). But plaintiff Hill's assertion is belied by the

transcript of that proceeding. Specifically, the Magistrate Judge presiding over his initial

---

[6] As a preliminary matter, the defendant contends that all of claims of the two named plaintiffs should be dismissed under the doctrine of judicial immunity. Def.'s Mem. at 22–23. The defendant reasons that "because District officials did not make the probable cause and Gerstein hold decisions, the District also is not liable for decisions made by judges in D.C. Superior Court." Id. This argument is unpersuasive. Judicial immunity bars claims against individual judges in their personal capacities. Smith v. Scalia, 44 F. Supp. 3d 28, 40 (D.D.C. 2014) ("[T]he claims against the individual judge defendants in their personal capacities are barred under the doctrine of absolute judicial immunity and thus must be dismissed."), aff'd, No. 14-5180, slip op. at 1–2 (D.C. Cir. Jan. 14, 2015). But the Amended Complaint asserts claims against the District of Columbia, not any state actor in a personal capacity, and thus this defense is not available to the defendant. See Kentucky v. Graham, 473 U.S. 159, 166 (1985) ("When it comes to defenses to liability, an official in a personal-capacity action may, depending on his position, be able to assert personal immunity defenses," but "[i]n an official-capacity action, these defenses are unavailable." (citations omitted)) (also noting that "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." (citation omitted))).

appearance received an oral request from the government to continue the hearing "for [twenty-four] hours to perfect the <u>Gerstein</u> [affidavit]," and granted the request, simply stating "Okay, back tomorrow for <u>Gerstein</u> perfection."  Def.'s Mem., Ex. H (<u>Hill</u> Transcript) at 5.  It is apparent from this transcript that the Magistrate Judge deferred her ruling on the issue of probable cause until the subsequent hearing.  <u>See</u> <u>id.</u>  Where, as here, a complaint's factual allegations are contradicted by exhibits of which the Court may take judicial notice, the Court need no longer accept as true plaintiff's version of events.  <u>See, e.g.</u>, <u>Kaempe v. Myers</u>, 367 F.3d 958, 963 (D.C. Cir. 2004) ("Nor must we accept as true the complaint's factual allegations insofar as they contradict exhibits to the complaint or matters subject to judicial notice.").  As plaintiff Hill fails to offer any other reason for this Court to find an unreasonable delay in his release, the Court must conclude that he has not asserted a constitutional deprivation with respect to his first three claims and thus must grant the defendant's motion to dismiss these claims.

### 2. The Duration of Plaintiff Lewis's Detention

With respect to plaintiff Lewis, the District concedes that it held her for more than forty-eight hours without a judicial finding of probable cause, Def.'s Mem. at 8 ("Lewis's final probable cause determination, while greater than [forty-eight] hours, was reasonable under the circumstances."), and ultimately acknowledges that it was ordered to release Lewis after failing to submit evidence substantiating probable cause, <u>id.</u> at 12 ("The government was unable to submit a corrected affidavit by the time the hearing was held on November 4, which resulted in Lewis's prompt release that same day.").  As an initial matter, these concessions alone are sufficient to survive a motion to dismiss with respect to plaintiff Lewis's claims pertaining to the length of her detention.  <u>E.g.</u>, <u>Long v. Gaines</u>, 167 F. Supp. 2d 75, 82 (D.D.C. 2001) (concluding that plaintiffs "clearly state[d] a claim upon which relief may be granted" pursuant to 42 U.S.C.

§ 1983 where they "alleged that the [government] had failed to provide prompt determinations of probable cause," defining "promptly as a decision made within [forty-eight] hours"), vacated, 241 F. Supp. 2d 1, 1 (D.D.C. 2002) (vacating the Memorandum Opinion's companion Order as moot in light of the defendant's adoption of a Consent Decree, but not disturbing the Court's prior findings of fact and law). Nevertheless, the defendant sets forth four arguments in support of the dismissal of these claims with respect to plaintiff Lewis, all of which are unavailing.

First, the District argues that Lewis was arrested on Saturday evening and "there are no adult arraignments on Sundays in D.C. Superior Court." Def.'s Mem. at 8. While it is true that Riverside contemplated circumstances under which it would be permissible for a judicial determination or bail hearing to take place outside of a forty-eight hour period, the justification must rise to the level of a "bona fide emergency or other extraordinary circumstance." Riverside, 500 U.S. at 57. And Riverside made clear that intervening weekends and holidays do not excuse a failure to observe Riverside's requirements of promptness. Riverside, 500 U.S. at 57 ("intervening weekends" do "not qualify as an extraordinary circumstance").

Second, the District claims that Lewis's detention was lawful pursuant to D.C. Code § 23-1322(a)(1)(A). Def.'s Mem. at 9–10. Specifically, the defendant reasons as follows: "the government requested a hold under [s]ection 23-1322(a)(1)(A), given that Lewis's latest offense constituted a violation of her release in another matter for which she has not pled guilty," that portion of the D.C. Code "allows a detention of up to five days," the Magistrate Judge scheduled "a Gerstein perfection hearing" for the following day, and plaintiff Lewis was released at that hearing. Id. The defendant therefore argues that "because the hold was lawful under [s]ection 23-1322(a)(1)(A), the claims fail." Id. at 10. But a plain reading of section 23-1322 demonstrates the fallacies in that logic. That section requires a judicial officer to:

> order the detention of a person charged with an offense for a period of not more than [five] days . . . if the judicial officer determines that the person charged with an offense . . . [w]as at the time the offense was committed, on . . . [r]elease pending trial for a felony or misdemeanor under local, state, or federal law.

D.C. Code § 23-1322 (2013).  It does not speak to the District's obligation to obtain a prompt judicial determination of probable cause.  See id.  And the District of Columbia Court of Appeals has specifically explained that a "baseline probable cause determination" is required before a judicial officer may consider pretrial detention according to the requirements set forth in section 23-1322.  Tyler v. United States, 705 A.2d 270, 276–77 (D.C. 1997); see also United States v. Edwards, 430 A.2d 1321, 1335–41 (D.C. 1981) (articulating the similarities and differences between the procedural due process requirements of a Gerstein probable cause determination and a pretrial detention hearing conducted pursuant to section 23-1322).  Here, no finding of probable cause was made as grounds for Lewis's detention.

Third, the District asserts that the probable cause hearings comported with Rule 5 of the Superior Court Rules of Criminal Procedure, which "governs initial court proceedings following an arrest in the District," and therefore plaintiff Lewis's detention was lawful.  Def.'s Mem. at 11–13.  Rule 5 does not specify how soon an arrestee must first appear before a judicial officer, but does require the District to "take the arrested person without unnecessary delay before the Court."  D.C. Super. Ct. R. Crim. P. 5(a) (2015).  The Rule also notes that, where a judicial officer "imposes any conditions of release which constitute a significant restraint on pretrial liberty," the prosecutor must file "by the end of the next working day a copy of a sworn statement of fact offered to establish probable cause."  D.C. Super. Ct. R. Crim. P. 5(c)

(emphasis added).[7]  The defendant suggests that this language permits it to continue detention

beyond the 48-hour window if it "submit[s] a Gerstein affidavit by the end of the next business

day."  Def.'s Mem. at 12.  But contrary to the District's assertions, the plain meaning of the

phrase, "conditions of release," unmistakably indicates that the arrestee must in fact be released

for this provision to apply.  See Release, Black's Law Dictionary (10th ed. 2014) (defining

release, in part, as "[t]he action of freeing or the fact of being freed from restraint or

confinement").  Nowhere in this Rule is it suggested that a judicial officer may delay a finding of

probable cause for an individual who remains detained beyond what is considered "prompt"

under Riverside.  Cf. In re S.J., 686 A.2d 1024, 1026 (D.C. 1996) (finding invalid the trial

court's order of continued detention that it issued at the defendant's initial appearance because

the trial court did not make any probable cause determination and continued the matter to permit

the government five additional days to obtain a witness for a probable cause hearing).  And even

if the Court could accept the District's interpretation of the Rule, compliance with local

procedural rules does not trump an arrestee's constitutionally protected right to a prompt

probable cause determination.  Riverside, 500 U.S. at 58 ("The record indicates . . . that the

---

[7] The Superior Court amended its Rules of Criminal Procedure, effective April 1, 2016. See Court Order 1405 at 1 (D.C. Super. Ct. Apr. 1, 2016).  Rule 5 was redrafted "to conform to the general restyling of the federal rules in 2002." Id. at 11.  As noted in the Comment to the amendments to this local Rule, Paragraph (e) of the new Rule, "which contains the provisions of former paragraph (c), . . . sets forth the procedures for a probable cause determination that must be made whenever the court imposes significant restraints on the pretrial liberty of a person arrested without a warrant." Id. at 12.  In pertinent part, that Rule now reads:

> If a defendant is arrested without a warrant, and the court imposes upon the defendant any conditions of release which constitute a significant restraint on pretrial liberty, the court must, unless the defendant waives an initial probable cause determination, require the prosecutor to file with the clerk by the end of the next working day a copy of a sworn statement of fact offered to establish probable cause.

Id. at 11 (Rule 5(e)(1)).  Thus, no substantive changes to the Rule have occurred, and the Court's analysis would be the same under either version of the Rule.

County's current policy and practice do not comport fully with the principles" of the Fourth Amendment.).

Finally, the District contends that even if plaintiff Lewis's detention amounted to a constitutional deprivation, her first three claims must be dismissed because she has failed to allege a custom, policy, or practice on the part of the District that caused the purported violations. Def.'s Mem. at 21–22. But the Magistrate Judge presiding over Lewis's initial hearing indicated to the contrary. In denying the request of defense counsel that Lewis be released while the government sought to "perfect" its <u>Gerstein</u> affidavit, the Magistrate Judge responded: "If [the District] ask[s] for the [twenty-four] hours, they get it . . . . I've read the statute, been here five years, been trained and . . . [t]he bottom line is they get the [twenty-four] hours." Def.'s Mem., Ex. G (<u>Lewis</u> Transcript) at 3–4. "[E]ven a single decision by [municipal policymakers] unquestionably constitutes an act of official government policy." <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 480 (1986). While it is unclear what particular statute or training the Magistrate Judge was referencing during the hearing, the Court must afford the plaintiff "the benefit of all inferences that can be derived from the facts alleged," <u>Kowal</u>, 16 F.3d at 1276, and thus, finds plaintiff Lewis's allegations sufficient to survive the defendant's motion to dismiss, <u>cf.</u> <u>Barnes v. District of Columbia</u>, 793 F. Supp. 2d 260, 282 (D.D.C. 2011) ("Overdetentions caused by the District's ordinance are clearly constitutional violations executed in accordance with District policy officially adopted and promulgated by the Council."). The defendant having failed to present any persuasive arguments to find otherwise, the Court must deny the defendant's motion with respect to plaintiff Lewis's first three claims.

### B.  The Plaintiffs' Fifth Amendment Claim (Claim IV)

The Amended Complaint asserts that the District violated the Fifth Amendment "by denying a bail hearing to arrestees like [the plaintiffs] who contest probable cause after a judicial officer has made a finding of no probable cause[,] but granting a bail hearing to arrestees who concede probable cause after a judicial officer has made a finding of no probable [cause]."  Am. Compl. ¶ 82.  The District has moved to dismiss this claim, contending that it fails to establish a violation of the Due Process Clause of the Fifth Amendment because the circumstances of the plaintiffs' detentions do not amount to punishment, Def.'s Mem. at 17–18 (citing Bell v. Wolfish, 441 U.S. 520, 538–39 (1979)), and fails to state a violation of the Equal Protection Clause because they have not alleged that "the decision-makers in their particular cases were motivated by a discriminatory purpose," id. at 19 (citing McCleskey v. Kemp, 481 U.S. 279, 292 (1987)).

The plaintiffs' opposition fails to address any of the District's arguments with respect to their Fifth Amendment claim.  Accordingly, the Court will treat the District's arguments as conceded and dismiss this claim.  See Lewis v. District of Columbia, No. 10–5275, 2011 WL 321711, at *1 (D.C. Cir. Feb. 2, 2011) (per curiam) ("It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." (citation omitted)).

### C.  The Plaintiffs' Claims Pertaining to Blanket Strip Searches (Claim V)

The plaintiffs' final claim alleges that the defendant violated their Fourth and Fifth Amendment rights "by subjecting them to blanket strip[ ]searches at the [District of Columbia] Jail after presentment."  Am. Compl. ¶ 84.  Historically, the Supreme Court has recognized

"[t]he difficulties of operating a detention center" and explained that "a regulation impinging on an inmate's constitutional rights must be upheld 'if it is reasonably related to legitimate penological interests.'"  <u>Florence v. Bd. of Chosen Freeholders</u>, __ U.S. __, __, 132 S. Ct. 1510, 1515 (2012) (quoting <u>Turner v. Safley</u>, 482 U.S. 78, 84–85 (1987)).  In its seminal case on Fourth Amendment challenges to strip search detention policies, the Court acknowledged that:

> A detention facility is a unique place fraught with serious security dangers. Smuggling of money, drugs, weapons, and other contraband is all too common an occurrence. And inmate attempts to secrete these items into the facility by concealing them in body cavities are documented in this record . . . and in other cases.

<u>Bell</u>, 441 U.S. at 559.  The Court went on to articulate the framework for analyzing such challenges as follows:

> The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application.  In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails.  Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.

<u>Id.</u>  Subsequently, in <u>Florence</u>, the Supreme Court ruled that "security imperatives involved in jail supervision override the assertion that some detainees must be exempt from the more invasive search procedures at issue absent reasonable suspicion of a concealed weapon or other contraband."  __ U.S. at __, 132 S. Ct. at 1518.  Thus, "every detainee who will be admitted to the general population [of a jail] may be required to undergo a close visual inspection while undressed."  <u>Id.</u> at __, 132 S. Ct. at 1513.

The Justices who composed the majority in <u>Florence</u> did not agree with all aspects of the majority opinion: Justice Kennedy delivered the opinion of the Court with Justices Roberts, Scalia, and Alito joining in full, and Justice Thomas joining the opinion except with respect to Part IV.  <u>Id.</u> at __, 132 S. Ct. at 1510.  Part IV limited <u>Florence</u>'s holding, explaining that there

may be circumstances in which such search policies could be unreasonable.  Id. at __, 132 S. Ct. at 1522–23.  Part IV noted that the facts of Florence did not require the Court to consider situations where, for example: "a detainee will be held without assignment to the general jail population and without substantial contact with other detainees"; "an arrestee['s] detention has not yet been reviewed by a magistrate or other judicial officer, and [the arrestee] can be held in available facilities removed from the general population"; "officers engag[e] in intentional humiliation and other abusive practices"; and "searches . . . involve the touching of detainees." Id.  Justices Roberts and Alito each issued concurrences indicating that their decisions were predicated on the inclusion of Part IV, id. at __, 132 S. Ct. at 1523 (Roberts, J., concurring) ("[I]t is important for me that the Court does not foreclose the possibility of an exception to the rule it announces.  Justice KENNEDY explains that the circumstances before it do not afford an opportunity to consider that possibility." (citing id. at __, 132 S. Ct. at 1522–1523 (Part IV))); id. at __, 132 S. Ct. at 1525 (Alito, J., concurring) ("The Court does not address whether it is always reasonable, without regard to the offense or the reason for detention, to strip search an arrestee before the arrestee's detention has been reviewed by a judicial officer.  The lead opinion explicitly reserves judgment on that question.  In light of that limitation, I join the opinion of the Court in full."  (citing id. at __, 132 S. Ct. at 1522–23 (Part IV))).  Particularly pertinent to the present case, Justice Alito elaborated on Part IV, explaining that

> the Court does not hold that it is always reasonable to conduct a full strip search of an arrestee whose detention has not been reviewed by a judicial officer and who could be held in available facilities apart from the general population.  Most of those arrested for minor offenses are not dangerous, and most are released from custody prior to or at the time of their initial appearance before a magistrate.  In some cases, the charges are dropped.  In others, arrestees are released either on their own recognizance or on minimal bail.  In the end, few are sentenced to incarceration.  For these persons, admission to the general jail population, with the concomitant humiliation of a strip search, may not be reasonable, particularly if an alternative procedure is feasible.

Id. at __, 132 S. Ct. at 1524 (Alito, J., concurring).  Justice Breyer issued a dissent in Florence, joined by Justices Ginsburg, Sotomayor, and Kagan, wherein he reasoned that:

> a search of an individual arrested for a minor offense that does not involve drugs or violence—say a traffic offense, a regulatory offense, an essentially civil matter, or any other such misdemeanor—is an "unreasonable searc[h]" forbidden by the Fourth Amendment, unless prison authorities have reasonable suspicion to believe that the individual possesses drugs or other contraband.

Id. at __, 132 S. Ct. at 1525 (Breyer, J., dissenting).

One member of this Circuit has afforded particular weight to the exceptions articulated in Florence, remarking that "six Justices of the Supreme Court have expressed unease with the type of indiscriminate strip searching . . . that is challenged here."  Johnson v. District of Columbia, 734 F.3d 1194, 1206 (D.C. Cir. 2013) (Rogers, J., concurring in part and concurring in the judgment) (challenge to District of Columbia Superior Court cellblock's policy of subjecting "all incoming detainees" to strip search, including "pre-presentment arrestees charged with nonviolent, non-drug offenses").  In the present case, the plaintiffs allege that "the judicial officer had made a finding of no probable cause,[8] and there were other readily available facilities removed from the general population of the DC Jail in which [the plaintiffs] could have been held."  Pls.' Opp'n at 21.  Accordingly, the plaintiffs' allegations fall squarely within circumstances not resolved by the Supreme Court in Florence.  Florence, __ U.S. at __, 132 S. Ct. at 1523; see also id. at __, 132 S. Ct. at 1523 (Roberts, C.J., concurring); id. at __, 132 S. Ct. at 1524 (Alito, J., concurring).

---

[8] As explained, supra, the Court questions this characterization of the judicial officer's rulings, as the transcripts of the plaintiffs' detention hearings indicate that the Magistrate Judges merely deferred any ruling on the existence of probable cause.  Regardless, it is apparent from the transcripts that no affirmative findings of probable cause were made during the plaintiffs' initial appearances.  See Def.'s Mem., Ex. H (Hill Transcript); Def.'s Mem., Ex. G (Lewis Transcript).

The Third Circuit has also relied on Part IV of <u>Florence</u> to distinguish circumstances where the challenged strip search involves physical contact with the detainee. <u>See</u> <u>Chavarriaga v. New Jersey Dep't of Corr.</u>, 806 F.3d 210, 231 (3d Cir. 2015). As that Circuit explained,

> the strip searches in <u>Florence</u> involved only the visual inspection of detainees' body cavities, and there "[we]re no allegations that the detainees . . . were touched in any way as part of the searches." Indeed, in response to an amici's "concerns about instances of officers engaging in intentional humiliation and other abusive practices," the Court recognized that there may "be legitimate concerns about the invasiveness of searches that involve the touching of detainees." Thus, <u>Florence</u> does not govern here.

<u>Id.</u> (quoting <u>Florence</u>, __ U.S. at __, 132 S. Ct. at 1515, 1523 (Part IV)); <u>see also</u> <u>Florence</u>, __ U.S. at __, 132 S. Ct. at 1514 ("Apparently without touching the detainees, an officer looked at their ears, nose, mouth, hair, scalp, fingers, hands, arms, armpits, and other body openings."); <u>id.</u> at __, 132 S. Ct. at 1515 ("There are no allegations that the detainees here were touched in any way as part of the searches."). And here, the plaintiffs allege that after a detainee "takes all his clothes off" during the strip search, "[t]he guards rifle the hair, pull the ears back, and then open the mouth wide and lift the corners with their hands so that the guard can see left or right in the mouth." Am. Compl. ¶¶ 37–38.

For these reasons, the Court disagrees with the District's contentions that <u>Florence</u> requires dismissal of the plaintiff's allegations. Indeed, <u>Bell</u> instructs the Court to avoid "mechanical application" of Fourth Amendment challenges to detainee strip searches, and requires a "balancing" of the parties' respective interests "[i]n each case." 441 U.S. at 559. Thus, the plaintiffs should at least be afforded an opportunity to engage in factual discovery in order to demonstrate that the District's specific "response to the situation is exaggerated." <u>See</u> <u>Florence</u>, __ U.S. at __, 132 S. Ct. at 1518. This comports with the jurisprudence of this Court; as Judge Royce Lamberth has observed, "courts have declined to dismiss claims based on blanket strip search policies, whether or not the detention is justified." <u>Barnes v. District of</u>

<u>Columbia</u>, 242 F.R.D. 113, 119 (D.D.C. 2007) (citations omitted) (denying motion filed pursuant to Rule 12(b)(6)).

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that it must grant in part and deny in part the defendant's motion to dismiss. Accordingly, claims I, II, and III of the Complaint are dismissed with respect to plaintiff Hill, but not with respect to plaintiff Lewis. Claim IV is dismissed with respect to both plaintiffs, and claim V survives the defendant's motion with respect to both plaintiffs.[9]

**SO ORDERED** this 27th day of June, 2016.[10]

REGGIE B. WALTON
United States District Judge

---

[9] The Amended Complaint also asserts a number of class allegations based upon the claims of plaintiffs Hill and Lewis. <u>See</u> Am. Compl. ¶¶ 87–103. On June 10, 2015, the Court issued a Minute Order granting the plaintiffs' consent motion to stay the deadline for filing a motion for class certification, as required by the Court's Local Rules of Civil Procedure. <u>See</u> LCvR 23.1(b) ("Within [ninety] days after the filing of a complaint in a case sought to be maintained as a class action, . . . the plaintiff shall move for a certification under Rule 23(c)(1) . . . ."). Specifically, the deadline for the plaintiff to seek class action treatment has been "STAYED until the date of the Rule 16 scheduling conference, or the date on which a Rule 16 scheduling order is due, whichever is first." Minute Order (June 10, 2015). Accordingly, the Court will defer a ruling on these class allegations until such time as the parties have an opportunity to brief a motion to certify or to strike these class allegations.

[10] An Order consistent with this Memorandum Opinion shall be issued contemporaneously.