## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

KAYLA DIONNE LEWIS, et al.,     )
         )
      Plaintiffs,     )
         )
      v.     )     Civil Action No. 15-352 (RBW)
         )
GOVERNMENT OF THE     )
DISTRICT OF COLUMBIA,     )
         )
      Defendant.     )
         )

## MEMORANDUM OPINION

Kayla Dionne Lewis and Felton Hill, the named plaintiffs in this case, bring this putative class action against the defendant, the District of Columbia (the "District"), pursuant to 42 U.S.C. § 1983 (2018), alleging constitutional violations arising from their arrests and subsequent detentions. See generally Third Amended Complaint [a]nd Jury Demand ("Third Amended Complaint" or "3d Am. Compl."). Currently pending before the Court is Defendant District of Columbia's Motion to Dismiss the Third Amended Complaint ("Def.'s Mot."). Upon careful consideration of the parties' submissions,[1] the Court concludes for the following reasons that it must grant in part and deny in part the District's motion to dismiss.

## I.  BACKGROUND

The Court discussed the factual background of this case in its Memorandum Opinion issued on June 27, 2016, see Lewis v. District of Columbia ("Lewis I"), 195 F. Supp. 3d 53, 56–

---

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Memorandum of Points and Authorities in Support of Defendant the District of Columbia's Motion to Dismiss the Third Amended Complaint ("Def.'s Mem."); (2) the Plaintiffs' Opposition to Defendant's Motion to Dismiss the Third Amended Complaint ("Pls.' Opp'n"); and (3) the Reply in Support of Defendant the District of Columbia's Motion to Dismiss the Third Amended Complaint ("Def.'s Reply").

57 (D.D.C. 2016) (Walton, J.), and it will not reiterate those facts again here. The Court will, however, discuss the procedural posture of this case, which is relevant to the resolution of the pending motion.

In Lewis I, the Court granted in part and denied in part the District's motion to dismiss the plaintiffs' Amended Complaint. See id. at 56. The Court granted the District's motion to dismiss Hill's claims pertaining to the length of his detention because he had not "asserted a constitutional deprivation." Id. at 60. The Court concluded that "[t]he only reason proffered by Hill for the Court to find an unreasonable delay[—]that the judicial officer affirmatively concluded at his initial appearance that the government lacked probable cause to effect the arrest[—] . . . [was] belied by the transcript of that proceeding," id. at 59 (emphasis omitted), and that "Hill fail[ed] to offer any other reason for this Court to find an unreasonable delay in his release," id. at 60. Regarding Lewis's claims pertaining to the length of her detention, the Court denied the District's motion to dismiss and concluded that, because "the District concede[d] that it held her for more than forty-eight hours without a judicial finding of probable cause, and ultimately acknowledge[d] that it was ordered to release Lewis after failing to submit evidence substantiating probable cause, . . . these concessions alone are sufficient to survive a motion to dismiss[.]" Id. (citations omitted).[2] The Court also denied the District's motion to dismiss the plaintiffs' claim "that the [District] violated their Fourth and Fifth Amendment rights by subjecting them to blanket strip[ ]searches at the [District of Columbia] Jail after presentment." Id. at 63 (second and third alterations in original) (internal quotation marks omitted).

---

[2] The Court also granted the District's motion to dismiss regarding the plaintiffs' claim that the District "violated the Fifth Amendment by denying a bail hearing to arrestees like [the plaintiffs] who contest probable cause after a judicial officer has made a finding of no probable cause[,] but granting a bail hearing to arrestees who concede probable cause after a judicial officer has made a finding of no probable [cause]." Lewis I, 195 F. Supp. 3d at 62 (alterations in original) (internal quotation marks omitted). The plaintiffs have not realleged this claim in the Third Amended Complaint. See generally 3d Am. Compl.

The current operative complaint in this case—the Third Amended Complaint, which was filed on March 12, 2018, see 3d Am. Compl. at 1—asserts three claims that challenge the District's policies regarding probable cause determinations and detainee strip searches. Specifically, the plaintiffs claim that the District (1) "violated their Fourth Amendment rights . . . under Gerstein v. Pugh[, 420 U.S. 103 (1975),] by holding them after presentment after the administrative steps incident to their arrests had been completed without an affirmative finding of probable cause" ("Count One"), 3d Am. Compl. ¶ 103; (2) "violated the Fourth Amendment rights . . . of Lewis . . . [under County of Riverside v. McLaughlin, 500 U.S. 44 (1991)] by holding [her for] more than [forty-eight] hours after [her] arrest without a finding of probable cause by a judicial officer" ("Count Two"), id. ¶ 107; and (3) "violated the Fourth [and Fifth] Amendment rights of the [plaintiffs] . . . by subjecting them to blanket strip[ ]searches at the [District of Columbia] Jail after presentment (after the administrative steps incident to their arrests had been completed) without an affirmative finding of probable cause" ("Count Three"), id. ¶ 112. On March 26, 2018, the District filed its motion to dismiss the plaintiffs' Third Amended Complaint, see Def.'s Mot. at 1, which is the subject of this Memorandum Opinion.

## II. STANDARD OF REVIEW

A Rule 12(b)(6) motion tests whether a complaint "state[s] a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the [C]ourt to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

In evaluating a motion to dismiss under Rule 12(b)(6), "the Court must construe the complaint 'in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged.'" Hettinga v. United States, 677 F.3d 471, 476 (D.C. Cir. 2012) (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)). While the Court must "assume the[] veracity" of any "well-pleaded factual allegations" in a complaint, conclusory allegations "are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679. Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678 (citing Twombly, 550 U.S. at 555). Also, the Court need not accept "legal conclusions cast as factual allegations," or "inferences drawn by [the] plaintiff if those inferences are not supported by the facts set out in the complaint." Hettinga, 677 F.3d at 476. The Court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint[,] and matters of which [the Court] may take judicial notice." EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997).

### III.    ANALYSIS

#### A.    Claims Pertaining to the Length of the Plaintiffs' Detentions (Counts One and Two)

The District argues that (1) Counts One and Two "should be dismissed because they are premised on official acts by [judges for the] Superior Court [for the District of Columbia ('Superior Court')] [ ] who are not policymakers for the District," and "as such, [the] plaintiffs cannot establish municipal liability under Section 1983," Def.'s Mem. at 12; (2) Count One "should be dismissed as to Hill because his detention of less than [forty-eight] hours does not give rise to a Fourth Amendment violation," id. at 8; and (3) Count One "should be dismissed as to Lewis because it is duplicative of her allegations in [Count Two]—namely, that she was unreasonably held for over [forty-eight] hours without a finding of probable cause by a judicial

officer to allow the 'perfection' of the <u>Gerstein</u> affidavit,"[3] <u>id.</u>  The Court will address each of the District's arguments in turn.

While "a policeman's on-the-scene assessment of probable cause provides legal justification for arresting a person suspected of crime," <u>Gerstein</u>, 420 U.S. at 113–14, "the Fourth Amendment requires a timely judicial determination of probable cause as a prerequisite to detention," <u>id.</u> at 126.  "[A] jurisdiction that provides judicial determinations of probable cause within [forty-eight] hours of arrest will, as a general matter, comply with the promptness requirement of Gerstein."  <u>Riverside</u>, 500 U.S. at 56.  "Such jurisdictions will be immune from systemic challenges."  <u>Id.</u>  However, a "probable cause determination in a particular case [does not] pass[] constitutional muster simply because it is provided within [forty-eight] hours."  <u>Id.</u> "Such a hearing may nonetheless violate <u>Gerstein</u> if the arrested individual can prove that his or her probable cause determination was delayed unreasonably," such as "delays for the purpose of gathering additional evidence to justify the arrest, a delay motivated by ill will against the arrested individual, or delay for delay's sake."  <u>Id.</u>  If an arrested individual is detained for more than forty-eight hours without a judicial determination of probable cause, "the burden shifts to the government to demonstrate the existence of a bona fide emergency or other extraordinary circumstance."  <u>Id.</u> at 57.

As an initial matter, the Court disagrees with the District's first argument that Count One and Two must be dismissed because the plaintiffs "fail[ed] to allege a specific District custom, policy[,] or a practice that runs afoul of the Constitution" in order to state a municipal liability

---

[3] A <u>Gerstein</u> affidavit is "filed to provide a proper basis for the judicial finding of probable cause that <u>Gerstein</u> requires to justify restraint after an arrest."  <u>In re Holloway</u>, 995 F.2d 1080, 1083 (D.C. Cir. 1993).

claim under Section 1983.[4]  Id. at 13.  The Court notes that the District previously advanced this

same argument in its motion to dismiss the Amended Complaint, see Defendant District of

Columbia's Motion to Dismiss Amended Complaint at 21 ("The Amended Complaint falls far

short of stating a municipal liability claim under Section 1983. . . . [The] [p]laintiffs fail to allege

a specific District custom, policy or a practice that runs afoul of the Constitution."), and the

Court rejected it in Lewis I, concluding that "the Magistrate Judge presiding over Lewis's initial

hearing indicated to the contrary," see Lewis I, 195 F. Supp. 3d at 62.  Specifically, the Court

stated:

> In denying the request of defense counsel that Lewis be released while the
> government sought to "perfect" its Gerstein affidavit, the Magistrate Judge
> responded: "If [the District] ask[s] for the [twenty-four] hours, they get it . . . .
> I've read the statute, been here five years, been trained and . . . [t]he bottom line is
> they get the [twenty-four] hours."  "[E]ven a single decision by [municipal
> policymakers] unquestionably constitutes an act of official government policy."
> While it is unclear what particular statute or training the Magistrate Judge was
> referencing during the hearing, the Court must afford the plaintiff "the benefit of
> all inferences that can be derived from the facts alleged," and thus, finds [ ]
> Lewis's allegations sufficient to survive the defendant's motion to dismiss[.]

---

[4] "Although a municipality is . . . subject to suit under [Section] 1983 for constitutional violations, it . . . cannot be
held liable under [Section] 1983 on a respondeat superior theory."  Singletary v. District of Columbia, 766 F.3d 66,
72 (D.C. Cir. 2014) (internal quotation marks omitted) (quoting Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691
(1978)).  Therefore, in order to state a claim for municipal liability, the complaint must "state[] a claim that a custom
or policy of the municipality caused the violation," Baker v. District of Columbia, 326 F.3d 1302, 1306 (D.C. Cir.
2003) (citations omitted), and must allege an "'affirmative link,' such that a municipal policy was the 'moving
force' behind the constitutional violation," id. (first quoting City of Okla. City v. Tuttle, 471 U.S. 808, 822 (1985);
then quoting City of Canton v. Harris, 489 U.S. 378, 389 (1989) (plurality opinion)).  There are "a number of ways a
municipality can adopt a policy or custom that might create liability," Brown v. District of Columbia, 514 F.3d
1279, 1283 (D.C. Cir. 2008), including

> the explicit setting of a policy by the government that violates the Constitution; the action of a
> policy maker within the government; the adoption through a knowing failure to act by a policy
> maker of actions by his subordinates that are so consistent that they have become "custom"; or the
> failure of the government to respond to a need (for example, training of employees) in such a
> manner as to show "deliberate indifference" to the risk that not addressing the need will result in
> constitutional violations,

Baker, 326 F.3d at 1306 (citations omitted) (first quoting City of St. Louis v. Praprotnik, 485 U.S. 112, 123–30
(1988); then quoting Harris, 489 U.S. at 390).

Id. (second through tenth alterations in original) (citations omitted)). Therefore, because the Third Amended Complaint largely mirrors the Amended Complaint on this matter, compare Amended Complaint for Judgment and Money Damages and Injunctive Relief and Equitable Relief and Declaratory Relief and Jury Demand, with 3d Am. Compl., and because the District has not presented any new arguments to warrant a different ruling,[5] see Def.'s Mem. 12–16, the Court, for the same reasons indicated in Lewis I, 195 F. Supp. 3d at 62, must deny the District's motion to dismiss on the basis of its argument that the Third Amended Complaint does not establish a basis for finding municipal liability under Section 1983.

---

[5] The District cites several cases decided by other Circuits in support of its argument that the plaintiffs cannot establish municipal liability because their claims are premised on actions by Superior Court judges. See Def.'s Mem. at 14–15. However, none of these cases stands for the proposition that, as a matter of law, municipal judges cannot expose a municipality to liability, but rather conclude that the municipality cannot be liable for the actions of a municipal judge because the judge's acts were more appropriately attributed to the state rather than the municipality. See, e.g., Granda v. City of St. Louis, 472 F.3d 565, 568–69 (8th Cir. 2007) (finding that a municipality was not liable for the judicial decision of a municipal judge because it "was not a final policy decision"); Deleon v. City of Haltom City, 106 F. App'x 909, 911–12 (5th Cir. 2004) (affirming dismissal of Section 1983 claims against a municipality for the actions of a municipality judge "under the facts of this case" because the municipality did not have "the power to set judicial policy for a municipal judge" and "could [not] have ratified a municipal judge's judicial conduct"); Ledbetter v. City of Topeka, Kan., 318 F.3d 1183, 1189 (10th Cir. 2003) (concluding that because "the authority of the municipal [judge] . . . is established by state law, . . . [a]ny procedural 'trailblazing' on his part . . . was not done under the auspices of the [municipality] and could not be interpreted as promulgating municipal policy" (fourth alteration in original)); Eggar v. City of Livingston, 40 F.3d 312, 314–15 (9th Cir. 1994) ("The crucial factor is whether under state law the acts in question were performed under the municipality's or the state's authority. [The municipal] [j]udge['s] [ ] acts and decisions advising indigents of their rights are not administrative or ministerial acts based on the judge's authority as a local official. However, the judge's treatment of indigent defendants was an exercise of judicial discretion drawn from the authority of the state, appealable to higher state courts, and closely analogous to actions found to be outside the scope of municipal liability."); Johnson v. Moore, 958 F.2d 92, 94 (5th Cir. 1992) ("[A] municipal judge acting in his or her judicial capacity to enforce state law does not act as a municipal official or lawmaker." (emphasis added)); Woods v. City of Mich., 940 F.2d 275, 280 (7th Cir. 1991) (finding that municipality cannot be held liable for actions of a municipal judge because, under state law, municipality judges "are not county officials," but rather "are considered to be officials of the state," and because the county courts "are exclusively units of the judicial branch of the state's constitutional system"); Familias Unidas v. Briscoe, 619 F.2d 391, 404 (5th Cir. 1980) (finding that although "[t]here are . . . many actions of a county judge that may justifiably be considered to constitute or represent county 'policy' under Monell," the municipal judge's action did not "represent[] the official policy of [the municipality]" and was "more fairly [ ] characterized as the effectuation of the policy of the State . . . , for which the citizens of a particular county should not bear singular responsibility"). Moreover, the facts of the cases cited by District are not analogous to the facts in this case given the Superior Court judges' unique status as "Article I . . . judges, whom Congress intended to be analogous to state court judges." United States v. Stewart, 104 F.3d 1377, 1391 (D.C. Cir. 1997). Therefore, even though the plaintiffs face a significant challenge in establishing municipality liability on the basis of the actions of Superior Court judges, the cases cited by the District do not require dismissal of Lewis's claim regarding the length of her detention, especially at this stage of the litigation where the Court is tasked with evaluating the sufficiency of the allegations contained in a complaint.

The Court agrees with the District's second argument that "[t]he Third Amended Complaint [ ] does not present a basis to resurrect [Count One of the Third Amended Complaint as to Hill, which] th[e] Court previously dismissed." Def.'s Mem. at 8. As the Court concluded previously in Lewis I, Hill's claims regarding the length of his detention in the Amended Complaint "d[id] not pass muster," 195 F. Supp. 3d at 59, because he "fail[ed] to offer a[] [sufficient] reason for this Court to find an unreasonable delay in his release," id. at 60. Count One of the Third Amended Complaint fares no better. The only reason that Hill now offers for the Court to find that his probable cause determination was delayed unreasonably is that the Magistrate Judge presiding over his initial appearance, "without making an affirmative finding of probable cause, . . . ordered [that] Hill [be] held until the next day . . . to give the District an opportunity to perfect the Gerstein [affidavit]." 3d Am. Compl. ¶ 95 (internal quotation marks omitted).[6] However, the Supreme Court has acknowledged that "the Fourth Amendment does not compel an immediate determination of probable cause upon completing the administrative steps incident to arrest," Riverside, 500 U.S. at 53–54, as "some delays are inevitable[,] [f]or example," in jurisdictions "where[] . . . the probable cause determination is combined with

_____

[6] In their opposition, the plaintiffs claim several times that "the District violated [Hill's] [Fourth] Amendment rights by holding him after [his] [initial] [a]ppearance. . . after a Superior Court Magistrate Judge found the District had failed to establish probable cause." Pls.' Opp'n at 4; see id. at 7 ("[T]he Magistrate Judge found that the District's Gerstein affidavit failed to establish probable cause."); id. at 9 (same); id. at 10 (same with respect to Lewis); id. at 12 ("[The] [p]laintiffs' position is that Magistrate Judge Howe made a finding of no probable cause at the probable cause determination segment of Hill's [initial] [a]ppearance . . . [and that such finding] may have been implicit as opposed to explicit, but she clearly found that the [District] had failed to establish probable cause."). However, as the Court previously noted,

[this] assertion is belied by the transcript of that proceeding. Specifically, the Magistrate Judge presiding over his initial appearance received an oral request from the government to continue the hearing "for [twenty-four] hours to perfect the Gerstein [affidavit]," and granted the request, simply stating "Okay, back tomorrow for Gerstein perfection." It is apparent from this transcript that the Magistrate Judge deferred her ruling on the issue of probable cause until the subsequent hearing. Where, as here, a complaint's factual allegations are contradicted by exhibits of which the Court may take judicial notice, the Court need no longer accept as true plaintiff[s'] version of events.

Lewis I, 195 F. Supp. 3d at 59–60 (second and third alterations in original) (citations omitted).

arraignment, there will be delays caused by paperwork and logistical problems," id. at 55, and in such situations, "the Fourth Amendment permits a reasonable postponement of a probable cause determination while the police cope with the everyday problems of processing suspects through an overly burdened criminal justice system," id. And, although states are accorded "flexibility" by Gerstein in regards to integrating probable cause determinations into their pretrial procedures, this accommodation "has its limits[] [and] is not a blank check." Id. at 55. However, Hill's proffered reason for the Court to find an unreasonable delay is insufficient to resurrect his claim regarding the length of his detention. Therefore, the Court concludes that Hill has not sufficiently alleged that the Magistrate Judge's deferral of his probable cause determination resulted in an unreasonable delay and thus must again grant the District's motion to dismiss Hill's claim challenging the length of his detention.

The Court also agrees with the District's third argument that Lewis cannot maintain both Counts One and Two against the District. See Def.'s Mot. at 11–12. In Count Two, Lewis alleges that the District violated a right guaranteed by the Fourth Amendment "by holding [her for] more than [forty-eight] hours after [her] arrest without a finding of probable cause by a judicial officer." 3d Am. Compl. ¶ 107. But, in Count One, Lewis already alleges that her Fourth Amendment rights were violated by the District when she was detained "after presentment after the administrative steps incident to [her] arrest[] had been completed without an affirmative finding of probable cause." Id. ¶ 103. These allegations, although couched in different terms and pleaded in separate counts of the Third Amended Complaint, are premised on the very same set of factual allegations, involve the same legal standard, and if successful, would result in identical relief. In fact, both counts, at their core, pertain to the same alleged violation of Lewis's Fourth Amendment right to be free from an unreasonable seizure. And, despite

Lewis's characterization of Count Two as a claim that purports to be brought under <u>Riverside</u> distinct from Count One, which is purportedly brought under <u>Gerstein</u>, <u>compare</u> 3d Am. Compl. at 22 ("[Section] 1983 Liability of District of Columbia under the Fourth Amendment for Illegal Holds under <u>Riverside</u>."), <u>with</u> <u>id.</u> at 21 ("[Section] 1983 Liability of District of Columbia under the Fourth Amendment under <u>Gerstein</u>[.]"), the Supreme Court in <u>Gerstein</u> and <u>Riverside</u> did not create distinct causes of action that allows Lewis to maintain Count One and Count Two as distinct causes of action.[7]  In fact, because Count One is indistinguishable from Count Two, Lewis is doing nothing more than pursuing the same claim in separate counts.

> According to Lewis, she can maintain the two counts separately
>
> because all [of] the other proceedings (such as filing an information, appointment of counsel, [and] arraignment) the District combines with the probable cause determinations for detained arrestees had been completed before Magistrate Judge Howe . . . addressed whether [the <u>Gerstein</u> affidavits] established probable cause to hold [the plaintiffs,] . . . none of the delay caused by the <u>Gerstein</u> [ ] holds was attributable to the District's combining those additional <u>Riverside</u> proceedings with the probable cause determination required by <u>Gerstein</u>.  Therefore, the [forty-eight] hour safe harbor, which was developed to accommodate those types of delay, drops out of part of the analysis.

Pls.' Opp'n at 24.[8]  However, this argument is premised upon a flawed interpretation of the Supreme Court's decisions in not only <u>Gerstein</u>, but also <u>Riverside</u>.  Lewis claims that the Supreme Court in <u>Gerstein</u> "did not address the related issue of the time within which the government must provide probable cause determinations to detained arrestees arrested [without] warrant[s] when the probable cause determination is combine with other pretrial proceedings, such as arraignment or bail hearings."  <u>Id.</u> at 20–21.  And, she maintains that the Supreme Court

---

[7] Rather, the Supreme Court, in <u>Gerstein</u>, recognized that, in accordance with the Fourth Amendment's guarantee to be free from unreasonable seizures, an individual arrested without a warrant is entitled to "a judicial determination of probable cause," which "must be made . . .  promptly," 420 U.S. at 114, 125, and later, in <u>Riverside</u>, "articulate[d] more clearly the boundaries of what is [considered 'prompt' and therefore] permissible under the Fourth Amendment," 500 U.S. at 56.

[8] The Court notes that Lewis does not cite any legal authority in support of her position.  <u>See</u> Pls.' Opp'n at 24.

in Riverside "addressed the specific fact pattern of how much time a jurisdiction has to provide probable cause determinations to detained arrestees where a jurisdiction combines the probable cause determination with other pretrial proceedings, such as arraignment or bail hearings" and concluded that the presumption of reasonableness applies to judicial determinations of probable cause provided within the forty-eight-hour time period only "when the probable cause determination is combined with other pretrial proceedings," id. at 22. This is incorrect. The Supreme Court in Gerstein, after stating that "[t]here is no single preferred pretrial procedure," recognized "the desirability of flexibility and experimentation by the [s]tates," and specifically concluded that

> [i]t may be found desirable, for example, to make the probable cause determination at the suspect's first appearance before a judicial officer, or the determination may be incorporated into the procedure for setting bail or fixing other conditions of pretrial release. . . . Whatever procedure a State may adopt, it must provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty, and this determination must be made by a judicial officer either before or promptly after arrest.

420 U.S. at 123–25 (emphasis added) (citations and footnotes omitted). And, the Supreme Court in Riverside did not limit its conclusion that "a jurisdiction that provides judicial determinations of probable cause within [forty-eight] hours of arrest will, as a general matter, comply with the promptness requirement of Gerstein," Riverside, 500 U.S. at 56, to instances where a jurisdiction combines a probable cause determination with other pretrial proceedings, as Lewis suggests, see Pls.' Opp'n at 22. Therefore, contrary to Lewis's arguments, Gerstein and Riverside do not give rise to separate violations of the Fourth Amendment. And, because Lewis "has not [sufficiently] articulated any reason to maintain [Count Two] . . . as a separate cause of action" from Count One, Rodriguez v. Lab. Corp. of Am. Holdings, 13 F. Supp. 3d 121, 128 (D.D.C. 2014), the Court finds Counts One and Two as duplicative of one another. However, instead of dismissing Count One as the District suggests, see Def.'s Mot. at 12, the Court will dismiss Count Two

since Count Two "does not present any legal or factual theories that are not already subsumed" in Count One, id. (quoting WMI Liquidating Tr. v. Fed. Deposit Ins. Corp., 110 F. Supp. 3d 44 (D.D.C. 2015) (Walton, J.)).

**B. The Plaintiffs' Strip-Search Claim (Count Three)**

The District also argues that the plaintiffs' Fifth Amendment claim regarding the District's alleged blanket strip searches should be dismissed because "[t]here is no legal basis to support a Fifth Amendment challenge to the strip searches of [the] plaintiffs." Def.'s Mem. at 16. The Court agrees with the District.

"Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing the claims." Albright v. Oliver, 510 U.S. 266, 273 (1998) (internal quotation marks omitted) (quoting Graham v. Connor, 490 U.S. 386, 395 (1989)).

Here, "[t]he Fourth Amendment, in prohibiting unreasonable searches, is clearly the explicit textual source of constitutional protection against the governmental conduct alleged in this case." Barnes v. District of Columbia, 793 F. Supp. 2d 260, 291 (D.D.C. 2011); see Cty. of Sacramento v. Lewis, 523 U.S. 833, 843 (1998) (stating that the Fourth "Amendment covers only 'searches and seizures'"). Therefore, because the plaintiffs' strip search claim is "covered by" the Fourth Amendment's guarantee to be free from an unreasonable search, Cty. of Sacramento v. Lewis, 523 U.S. at 843 (quoting United States v. Lanier, 520 U.S. 259, 272 n.7 (1997)), "[the] [p]laintiffs' challenge to the reasonableness of the [ ] strip searches . . . is properly analyzed under the Fourth Amendment, not the Fifth," Barnes, 793 F. Supp. 2d at 291. Accordingly, the Court grants the District's motion to dismiss Count Three of the Third

Amended Complaint to the extent that the plaintiffs rely on the Fifth Amendment to maintain their strip search claim.

## IV.     CONCLUSION

For the foregoing reasons, the Court concludes that Hill has failed to allege sufficient facts in support of his claim regarding the length of his detention.  The Court further concludes that Count Two is duplicative of Count One and that Count Two is therefore dismissed.  The Court also concludes that the plaintiffs cannot maintain their claim regarding the District's alleged blanket strip searches under the Fifth Amendment.  Accordingly, the Court will grant in part and deny in part the District's motion to dismiss.[9]

**SO ORDERED** this 8th day of October, 2019.[10]

REGGIE B. WALTON
United States District Judge

---

[9] The Third Amended Complaint also asserts a number of class allegations based upon the claims of the named plaintiffs. See 3d Am. Compl. ¶¶ 115–30. On June 10, 2015, upon the request of the plaintiffs and in light of the District's consent, the Court stayed the plaintiffs' deadline for filing a motion for class certification, as required by the Court's Local Civil Rules.  See LCvR 23.1(b) ("Within [ninety] days after the filing of a complaint in a case sought to be maintained as a class action, . . . the plaintiff shall move for a certification under Rule 23(c)(1)[.]").  Accordingly, the Court will defer a ruling on these class allegations until such time as the parties have an opportunity to brief a motion to certify or to strike these class allegations.

[10] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.