UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| KAYLA DIONNE LEWIS, et al., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> THE DISTRICT OF COLUMBIA, ) <br> ) <br> Defendant. ) <br> ) | Civil Action No. 15-352 (RBW) |

## MEMORANDUM OPINION

Kayla Dionne Lewis and Felton Hill, the named plaintiffs in this case, bring this putative class action pursuant to 42 U.S.C. § 1983 (2012) against the defendant, the District of Columbia (the "District"). See Third Amended Complaint [a]nd Jury Demand ("Third Amended Complaint" or "3d Am. Compl.") ¶ 1. Currently pending before the Court is the Plaintiffs' Motion for Class Certification ("Pls.' Mot."). Upon careful consideration of the parties' submissions,[1] the Court concludes for the following reasons that it must deny the plaintiffs' motion.

### I. BACKGROUND

The Court discussed the factual background of this case in its Memorandum Opinion issued on June 27, 2016, see Lewis v. District of Columbia ("Lewis I"), 195 F. Supp. 3d 53, 56–57 (D.D.C. 2016) (Walton, J.), and it will not reiterate those facts again here. The Court will,

---

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Plaintiff' Unredacted Memorandum of Law in Support of Their Motion for Class Action Treatment ("Pls.' Mem."); (2) the Defendant's Memorandum in Opposition to Plaintiff's Motion for Class Action Treatment ("Def.'s Opp'n"); and (3) the Plaintiff's Reply to Defendant's Opposition to Plaintiff's Motion for Class Action Treatment ("Pls.' Reply").

however, discuss the procedural posture of this case, which is relevant to the resolution of the pending motion.

> The current operative complaint in this case—the Third Amended Complaint, which was filed on March 12, 2018, see 3d Am. Compl. at 1—asserts three claims that challenge the District's policies regarding probable cause determinations and detainee strip searches. Specifically, the plaintiffs claim that the District (1) "violated their Fourth Amendment rights . . . under Gerstein v. Pugh[, 420 U.S. 103 (1975),] by holding them after presentment after the administrative steps incident to their arrests had been completed without an affirmative finding of probable cause" ("Count One"), 3d Am. Compl. ¶ 103; (2) "violated the Fourth Amendment rights . . . of Lewis . . . [under County of Riverside v. McLaughlin, 500 U.S. 44 (1991)] by holding [her for] more than [forty-eight] hours after [her] arrest without a finding of probable cause by a judicial officer" ("Count Two"), id. ¶ 107; and (3) "violated the Fourth [and Fifth] Amendment rights of the [plaintiffs] . . . by subjecting them to blanket strip[ ]searches at the [District of Columbia] Jail after presentment (after the administrative steps incident to their arrests had been completed) without an affirmative finding of probable cause" ("Count Three"), id. ¶ 112.

Lewis v. District of Columbia ("Lewis II"), 417 F. Supp. 3d 74, 79 (D.D.C. 2019) (alterations in original).

On October 8, 2019, the Court granted in part and denied in part the District's motion to dismiss the Third Amended Complaint. See Order at 1 (Oct. 8, 2019), ECF No. 91; see also Lewis II, 417 F. Supp. 3d at 78. Specifically, the Court dismissed Count One as to "Hill's claim challenging the length of his detention[,]" id. at 83, dismissed Count Two as duplicative of Count One, see id. at 85, and dismissed Count Three "to the extent that the plaintiffs rely on the Fifth Amendment to maintain their strip search claim[,]" id. at 86.

On January 31, 2020, the plaintiffs' filed their motion for class certification, see generally Pls.' Mot., which is the subject of this Memorandum Opinion.

## II.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 23, "'[a] class action may be maintained' if two conditions are met: [t]he suit must satisfy the criteria set forth in subdivision (a) (i.e., numerosity,

commonality, typicality, and adequacy of representation), and it also must fit into one of the three categories described in subdivision (b)." Shady Grove Orthopedic Assocs. v. Allstate Ins. Co., 559 U.S. 393, 398 (2010) (quoting Fed. R. Civ. P. 23(b)) (first alteration in original). A class may be certified pursuant to Rule 23(b)(1)

> if[] [ ] prosecuting separate actions by or against individual class members would create a risk of: (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests[.]

Fed. R. Civ. P. 23(b)(1). To certify a Rule 23(b)(2) class for injunctive or declaratory relief, a plaintiff must demonstrate that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2). For a putative class to be certified as a Rule 23(b)(3) class, the Court must find that (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members[,]" and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Coleman through Bunn v. Dist. of Columbia, 306 F.R.D. 68, 84–85 (D.D.C. 2015) (internal quotation marks omitted) (quoting Fed. R. Civ. P. 23(b)(3)).

> The matters pertinent to these findings include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

3

Fed. R. Civ. P. 23(b)(3)(A)–(D).  Accordingly, "a class plaintiff has the burden of showing that the requirements of Rule 23(a) are met and that the class is maintainable pursuant to one of Rule 23(b)'s subdivisions."  Richards v. Delta Air Lines, Inc., 453 F.3d 525, 529 (D.C. Cir. 2006).

To satisfy this burden, "a party seeking class certification must affirmatively demonstrate his [or her] compliance with [ ] Rule [23]—that is, he [or she] must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011) ("Rule 23 does not set forth a mere pleading standard.").  And, "[i]n deciding whether class certification is appropriate, a district court must [ ] undertake a 'rigorous analysis' to see that the requirements of the Rule have been satisfied." R.I.L-R v. Johnson, 80 F. Supp. 3d 164, 179 (D.D.C. 2015) (quoting Gen. Tel. Co. of SW v. Falcon, 457 U.S. 147, 161 (1982)).

## III. ANALYSIS

Here, the plaintiffs seek to certify the following classes pursuant to Rules 23(a) and 23(b)(3):

> [Individuals] who (1) in the period beginning three years before the date of filing of the original complaint in this case and going forward until the case is terminated; (2) [were] arrested in a warrantless arrest; (3) and at the initial appearance [in a case prosecuted by the Attorney General for the District] in [the] Superior Court [were] ordered held [in the District's custody]; (4) for a Gerstein perfection hold [for more than forty-eight hours from the time of arrest,]

(the "Illegal Hold Class"), 3d Am. Compl. ¶ 116; Pls.' Mot. at 4; Pls.' Reply at 3,[2] and

> [Individuals] who: (1) in the period beginning three years before the date of filing of the original complaint in this case and going forward until the case is terminated; (2) [were] arrested in a warrantless arrest; (3) and at the initial appearance in [the] Superior Court [were] ordered held; (4) for a Gerstein

---

[2] In their reply, the plaintiffs represent that they inadvertently defined the Illegal Hold Class to individuals who were held for twenty-four hours and that twenty-four "should read '[forty-eight].'"  Pls.' Reply at 3.

4

perfection hold; and (5) [were] then admitted to the [District of Columbia] Jail [or Correctional Treatment Facility] and subjected to a strip[ ]search[,]

(the "Illegal Strip Search Class"), 3d Am. Compl. ¶ 118; Pls.' Mot. at 4.[3] The Court will address in turn whether the plaintiffs have met the requirements for certifying each class.

### A.     The Illegal Hold Class

In order to satisfy the numerosity requirement, the proposed class must be "so numerous that joinder of all members is impracticable[.]" Fed. R. Civ. P. 23(a)(1). Although "[t]here is no specific threshold that must be surpassed in order to satisfy the numerosity requirement[,] . . . courts in this jurisdiction have observed that a class of at least forty members is sufficiently large to meet this requirement." Taylor v. D.C. Water & Sewer Auth., 241 F.R.D. 33, 37 (D.D.C. 2007). On the other hand, "a class that encompasses fewer than [twenty] members will likely not be certified absent other indications of impracticability of joinder," Coleman through Bunn, 306 F.R.D. at 76 (internal quotation marks omitted) (quoting Newberg on Class Actions § 3:11 (5th ed. 2014)), including "(1) judicial economy arising from avoidance of a multiplicity of actions; (2) geographic dispersion of class members; (3) size of individual claims; (4) financial resources of class members; and (5) the ability of claimants to institute individual suits," id. (internal quotation marks omitted) (quoting Newberg on Class Actions § 3:12).

Here, the plaintiffs have failed to meet their burden of establishing that the proposed Illegal Hold Class is so numerous that joinder of all members is impracticable. The plaintiffs claim that the proposed Illegal Hold Class is sufficiently numerous because "there are at least [twelve] Illegal Hold Class members, and likely there are at least [twenty]." Pls.' Mem. at 20–

---

[3] Although the plaintiffs request that their "motion for class certification pursuant to [Rules] 23(a), 23(b)(2), [and] 23(b)(3) . . . should be granted," Pls.' Mem. at 32, they only seek to certify their proposed classes pursuant to "Rules 23(a) and 23(b)(3)," Pls.' Mot. at 4. Accordingly, the Court need not address whether the plaintiffs have satisfied the requirements for certifying their proposed classes pursuant to Rule 23(b)(3).

21.[4] However, as the District correctly notes, even if the Court were to accept the plaintiffs' estimate, "[twelve] to [twenty] class members is too low to satisfy the numerosity requirement." Def.'s Opp'n at 9. And, although the plaintiffs assert that "this number is likely higher because the data [that] the District relies on for the release time is the Superior Court CourtView docketing data[, which] probably is based on the time the person appeared in Court for the Gerstein perfection hold or the time the Clerk made the docket entry rather than the actual time a person was released from [Department of Corrections] custody[,]" Pls.' Mem. at 21, they fail to cite to any evidence in support of their claim, and their bare assertion, without more, does not rise to the level of "prov[ing] that there are in fact sufficiently numerous parties," see In re Rail Freight Fuel Surcharge Antitrust Litig., 725 F.3d 244, 249 (D.C. Cir. 2013) (quoting Wal-Mart Stores, Inc., 564 U.S. at 350–51) (internal quotation marks omitted); see also Coleman through Bunn, 306 F.R.D. at 76 (stating that "a plaintiff must provide some evidentiary basis beyond a bare allegation of the existence of numerous class members" to satisfy the numerosity requirement). Therefore, the Court concludes that the plaintiffs have failed to prove the numerosity requirement of Rule 23(a), and because "[i]t is clear beyond cavil that the '[f]ailure to meet any of Rule 23(a)['s] . . . requirements precludes certification[,]'" Parker v. Bank of Am., N.A., 99 F. Supp. 3d 69, 89–90 (D.D.C. 2015) (second alteration in original) (citations omitted), it need not address the remaining requirements of Rule 23(a) or Rule 23(b)(3), see Jones v. Rossides, 256 F.R.D. 274, 276 (D.D.C. 2009) (stating that "the court need not address

---

[4] In their reply to the District's opposition, the plaintiffs raise several arguments for the first time regarding whether joinder of all members is impracticable. See Pls.' Reply at 7–8. In their motion for class certification itself, however, the plaintiffs only argue that the proposed Illegal Hold Class is "large enough to satisfy the numerosity requirement of Rule 23(a)(1), that is, [it] [is] [ ] too large for joinder of [the] plaintiffs to be a feasible alternative to a class action." Pls.' Mem. at 18. Therefore, in accordance with the "well-settled prudential doctrine that courts generally will not entertain new arguments first raised in a reply brief," Lewis v. District of Columbia, 791 F. Supp. 2d 136, 139 n.4 (D.D.C. 2011) (internal quotation marks omitted), the Court will "ignore those arguments in resolving the [plaintiffs'] motion [for class certification][,]" Baloch v. Norton, 517 F. Supp. 2d 345, 348 n.2 (D.D.C. 2007).

the parties' arguments with respect to Rule 23(a) because [the] [p]laintiffs clearly cannot satisfy Rule 23(b)"). Accordingly, the Court will deny the plaintiffs' motion to certify the Illegal Hold Class.

### B.     The Illegal Strip Search Class

As already noted, the plaintiffs seek to certify the proposed Illegal Strip Search Class pursuant to Rule 23(b)(3). See Pls.' Mot. at 4. The District opposes certification of this proposed class, arguing, inter alia, that the plaintiffs have failed to satisfy the predominance requirement under Rule 23(b)(3). See Def.'s Opp'n at 19–20. Although the Rule 23(a) prerequisites are typically considered first, cf. Richards, 453 F.3d at 529, because the Court agrees with the District that the plaintiffs cannot satisfy the predominance requirement of Rule 23(b)(3), it need not address the parties' arguments regarding whether the proposed Illegal Strip Search Class meets the requirements of Rule 23(a), see Jones, 256 F.R.D. at 276; see also Parker, 99 F. Supp. 3d at 89–90, and will therefore immediately address the parties' arguments regarding predominance.

Federal Rule of Civil Procedure 23(b)(3) authorizes a court to certify a class if "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "In order to meet the predominance requirement . . . , a plaintiff must establish that the issues in the class action that are subject to generalized proof, thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof." Johnson v. District of Columbia, 248 F.R.D. 46, 56 (D.D.C. 2008) (second alteration in original) (internal quotation marks omitted). The predominance requirement is "more stringent[,]" Amchem Products, Inc. v. Windsor, 521

7

U.S. 591, 609 (1997), and "far more demanding[,]" id. at 624, than the commonality requirement of Rule 23(a). The plaintiffs "must, at minimum, establish widespread injury to the class." Kottaras v. Whole Foods Mkt., Inc., 281 F.R.D. 16, 23 (D.D.C. 2012) (internal quotation marks omitted) (quoting In re Nw. Airlines Antitrust Litig., 208 F.R.D. 174, 223 (E.D. Mich. 2002)). "[T]his means that [the] [p]laintiff must proffer a method that will use common evidence to show that a substantial majority of the members of the proposed class were injured by—or, put another way, that there was widespread injury to the class from—[the] [d]efendant's unlawful conduct." Id.

Here, the plaintiffs argue that the predominance requirement is satisfied because "the dominant issue[] in the[] [Illegal Strip Search Class]" is "whether the strip[ ]searches amounted to unconstitutional municipal policy or practice[,]" Pls.' Mem. at 28, and that "the allegations of unconstitutional customs and practices of strip[ ]searches . . . relate to the [District's] conduct[] and therefore proof will not vary among the class members[,]" Pls.' Mem. at 29 (emphasis omitted). However, although the plaintiffs may be correct that "[w]hether the District had a policy or practice of strip-searching arrestees held on Gerstein [p]erfection holds and whether that policy or practice violated the Constitution satisfie[]s the commonality requirement for the [Illegal] Strip[ ]Search Class[,]" Pls.' Mem. at 23, the plaintiffs fail to show that the common issues predominate. As currently drafted, the plaintiffs' class definition for the proposed Illegal Strip Search Class includes all individuals who were subjected to a strip search, regardless of whether the strip search was conducted pursuant to the alleged blanket strip search policy, see Pls.' Mot. at 4, and unlike the classes that were certified in the cases upon which the plaintiffs rely in support of their argument that common questions predominate, see Johnson v. District of Columbia, 248 F.R.D. 46 (D.D.C. 2008); Barnes v. District of Columbia, 242 F.R.D. 113

8

(D.D.C. 2007); Bynum v. District of Columbia, 217 F.R.D. 43 (D.D.C. 2003), the plaintiffs have failed to limit the proposed Illegal Strip Search Class to individuals who were subjected to a strip search without any individualized finding of reasonable suspicion that he or she was concealing a weapon or other contraband, cf. Johnson, 248 F.R.D. at 50 n.3 (defining class as including women who were "subjected to a blanket strip . . . search without any individualized finding of reasonable suspicion or probable cause that she was concealing drugs, weapons or other contraband"); Barnes, 242 F.R.D. at 121 (defining class as including individuals who were "subject[ed] to a strip search . . . without any individualized finding of reasonable suspicion or probable cause that [he or she] was concealing contraband or weapons"); Bynum, 217 F.R.D. at 46 (defining class as including individuals who were "subjected to a strip search . . . without any individualized finding of reasonable suspicion or probable cause that he [or she] was concealing contraband or weapons"). Therefore, the proposed Illegal Strip Search Class includes individuals who were subjected to a strip search that was conducted pursuant to an individualized finding of reasonable suspicion that he or she was concealing a weapon or other contraband. And, as the District correctly notes, "the Court cannot . . . resolve in 'one stroke' the question of whether the strip[ ]search of each putative class member violated the Fourth Amendment," Def.'s Opp'n at 15 (quoting Amador v. Baca, 299 F.R.D. 618, 624 (C.D. Cal. 2014)), and instead must conduct individualized liability determinations on a case-by-case basis to ascertain whether each putative class member was subjected to a strip search pursuant to an alleged blanket strip search policy or pursuant to a reasonable suspicion that the individual in question was concealing a weapon or other contraband. And, the need for such individualized determinations defeat the predominance requirement of Rule 23(b)(3), see Daskalea v. Wash. Humane Soc., 275 F.R.D. 346, 369 (D.D.C. 2011) (denying class certification under Rule 23(b)(3) after finding that

"liability determinations will necessarily be individualized"), and thus, the Court must also deny the plaintiffs' motion to certify the Illegal Strip Search Class.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that the plaintiffs have failed to establish that the proposed Illegal Hold Class is so numerous that joinder of all members is impracticable. The Court further concludes that the plaintiffs cannot establish liability on a class-wide basis for the proposed Illegal Strip Search Class, as the class is currently defined and therefore have failed to show that common issues predominate over individual issues. Accordingly, the Court will deny the plaintiffs' motion for class certification.

**SO ORDERED** this 3rd day of September, 2020.[5]

REGGIE B. WALTON<br>United States District Judge

---

[5] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.