**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **KAYLA DIONNE LEWIS**<br>3029 Walbrock Ave.<br>Baltimore MD 21216<br><br>and<br><br>**FELTON HILL**<br>2750 Lorring Drive, Apt 202<br>District Heights MD 20747<br><br>and<br><br>**MARY FRANCES KENION**<br>802 Selby Blvd<br>Edgewater MD 21037<br><br>and<br><br>**DWAYNE HOWARD**<br>The Central Detention Facility<br>1901 D Street, S.E.<br>Washington, DC<br>[DCDC 213685]<br><br>and<br><br>**ROLLIE MONTGOMERY**<br>1828 Q Street SE Apt 4<br>Washington DC 20020<br><br>and<br><br>**RODNEY HAMILTON**<br>5321 Clay Terrace NE<br>Washington DC 20019<br><br>and<br><br>**TYRELL BARKLEY**<br>1315 S Street SE<br>Washington DC 20020 | Civil Action No.: **15-352 (RBW)** |

| On behalf of themselves and all others similarly situated, | |
|---|---|
| Plaintiffs, | |
| v. | |
| **GOVERNMENT OF THE DISTRICT OF COLUMBIA,** | |
| Defendant. | |

**CLASS ACTION COMPLAINT**
**Fourth Amended Complaint and Jury Demand**

**Introduction**

1.      Each of the Named Plaintiffs in this case (the plaintiffs listed in the caption of the complaint, Kayla Dionne Lewis, Felton Hill, Mary Kenion, Dwayne Howard, Rollie Montgomery, Rodney Hamilton, and Tyrell Barkley) was arrested without a warrant on minor charges and, on the basis of an information, taken before a Superior Court Judge or Magistrate Judge for an Initial Appearance, arraignment and hearing on probable cause and conditions of release.

2.      Each of the Named Plaintiffs is a "*Gerstein* perfection hold arrestee." That is, at the Initial Appearance of each Named Plaintiff, pursuant to the policies and the practices of the Government of the District of Columbia (sometimes the "District" or the District government"):

    1)  the District prosecutor asked for a five day hold pursuant to D.C. Code § 23-1322(a) which required the prosecutor to produce a "*Gerstein*" (a sworn probable cause narrative) to establish probable cause to support the

arrest;

2) the *Gerstein* the prosecutor proffered did not provide enough information for the Court to find probable cause to support the arrest (that is, to believe that [1] the Named Plaintiff [2] committed the offense described in the information);

3) the Judge or Magistrate Judge did not affirmatively make a finding of probable cause because the *Gerstein* did not provide enough information for the hold requested; but, nonetheless,

4) the Judge or Magistrate Judge at the prosecutor's request ordered the Named Plaintiff held pursuant to Section 1322(a) on a "*Gerstein* perfection hold" without bond and without an opportunity for conditions of release until the next court date for a "*Gerstein* perfection hearing" so the government could "perfect" the *Gerstein*, that is, submit a *Gerstein* setting out sufficient facts to establish that the Named Plaintiff committed an offense.

**3.** The Named Plaintiffs were then, like all *Gerstein* perfection hold arrestees, pursuant to the policy and practice of the District government booked into the DC Jail and then held at the DC Jail or "CTF," that is, the Central Treatment Facility.

**4.** The District of Columbia pursuant to its policy or practice held many of the *Gerstein* perfection hold arrestees for more than 48 hours without providing them a probable cause determination.

5.      The DC Jail applied its official blanket strip search policy (of subjecting all intakes to indiscriminate strip-searches) to all of the Named Plaintiffs (the "Illegal Strip Search Class Named Plaintiffs") even though they met all three elements of the *Florence* exception.

6.      Kayla Dionne Lewis, Mary Kenion, Dwayne Howard, Rollie Montgomery and Rodney Hamilton (the "**Illegal Hold Class Named Plaintiffs**"), on behalf of themselves and the persons described by the **Illegal Hold Class** (defined below), bring this action based on the Fourth Amendment under 42 U.S.C.A. § 1983 against the Government of the District of Columbia for injuries they and the other members of the class suffered during the Class Period because the District held them for "*Gerstein* perfection holds" and held them for more than 48 hours without providing probable cause determinations pursuant to the District's unconstitutional policies and practices.

7.      Kayla Dionne Lewis, Felton Hill, Mary Kenion, Dwayne Howard, Rollie Montgomery, Rodney Hamilton and Tyrell Barkley (the "**Illegal Strip Search Class Named Plaintiffs,**" that is, all the Named Plaintiffs), on behalf of themselves and the persons described by the Illegal Strip Search Class (defined below), bring this action based on the Fourth Amendment under 42 U.S.C.A. § 1983 against the Government of the District of Columbia for injuries they and the other members of the class suffered during the Class Period because the District held them for "*Gerstein* perfection holds" and applied the District's Department of Correction's ("DOC") "blanket" or "indiscriminate" strip search policy to them when they were committed to the DC Jail pursuant to the District's unconstitutional policies and practices (*i.e.*, without any individualized finding of reasonable suspicion that he or she was concealing a weapon or other

contraband) even though they met all three requirements of the *Florence* exception.

## Jurisdiction and Venue

**8.**      This Court has original jurisdiction over the § 1983 claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3).

**9.**      Venue is appropriate in this District. Each of the claims for relief arose in this judicial district and all events described herein occurred in the District of Columbia.

## Parties

**10.**      Each of the Named Plaintiffs is a *Gerstein* perfection hold arrestee, that is, a warrantless arrestee who at their Initial Appearance in Superior Court was held for a *Gerstein* perfection hold when the District prosecutor asked for a five day hold pursuant to D.C. Code § 23-1322(a) because the *Gerstein* did not establish probable cause that an offense was committed or that the Named Plaintiff committed it.

**11.**      Each of the Illegal Strip Search Class Named Plaintiffs also satisfies the three elements of the *Florence* exception: they were arrested on minor charges, they did not receive a probable cause determination before being held for a *Gerstein* perfection hold, and they were placed in the DC Jail or CTF instead of elsewhere such as Central Cell Block where they could have been held outside of the general population of the DC Jail or CTF.

**12.**      The District is a municipal corporation capable of being sued under D.C. Code § 1-102.

**13.**      During all events described herein, all Magistrate Judge or Judges and police officers and corrections officers referred to herein, named or unnamed, unless otherwise specified, were

officers of the District of Columbia acting within the scope of that employment, in furtherance of the interests of the District of Columbia, and under color of the statutes, ordinances, rules, customs, and usage of the District of Columbia.

**14.**     The District of Columbia Superior Court is the court of general jurisdiction of the government of the District of Columbia.

**15.**     The Office of the Attorney General of the District of Columbia ("DC-OAG") is the prosecuting agency of the government of the District of Columbia for certain minor offenses known as "District offenses." D.C. Code § 23-101(a).

**16.**     The "United States [A]ttorney for the District of Columbia or [their] assistants" may also prosecute such "District" offenses but only if the Attorney General for the District of Columbia "consents." D.C. Code § 23-101(d) and (e).

**17.**     The "United States [A]ttorney for the District of Columbia or [their] assistants" also prosecutes misdemeanors in the Superior Court. D.C. Code § 23-101(c) including certain "minor" misdemeanors.

**18.**     Section 23-101 is part of an "Act of Congress applicable exclusively to the District of Columbia," and thus is "considered to be a statute of the District of Columbia" for purposes of § 1983.

### Initial Appearances in the District of Columbia under Rule 5 When the District Seeks a Five-Day Hold

**19.**     Under *Gerstein v. Pugh*, 420 U.S. 103 (1975), the government may not detain an individual arrested without a warrant longer than needed to complete "the administrative steps

incident to arrest" without a finding of probable cause made by a neutral and detached magistrate on the basis of sworn facts presented by one of the arresting officers.

20.    All persons arrested without a warrant on "D.C. Code offenses" in the District are taken to the Superior Court for an Initial Appearance after "the administrative steps incident to arrest" have been completed pursuant to Superior Court Rule of Criminal Procedure ("D.C. Super. Ct. Crim."), Rule 5.

21.    Therefore, by definition, the District has completed all "the administrative steps incident to arrest" for all persons taken to the Superior Court for Initial Appearances pursuant to D.C. Super. Ct. Crim. Rule 5(a).

22.    At the Initial Appearance an arrestee charged with a misdemeanor or lesser offense appears before a "judicial officer" of the Superior Court (Judge or Magistrate Judge) and is arraigned on the charges by information. D.C. Super. Ct. Crim. Rule 5.

23.    If the government seeks to hold the arrestee on a five day hold pursuant to D.C. Code § 23-1322(a) the government must establish probable cause as a predicate to the five day hold.

24.    In the Superior Court the practice is that the prosecutors requesting detention present the probable cause facts to the Magistrate Judge or Judge in a sworn affidavit made by one of the arresting officers (the "*Gerstein*").

25.    Sometimes for various reasons the *Gerstein* has a "defect," that is, the *Gerstein* does not have enough information to establish probable cause to believe that an offense has been committed or that a particular arrestee is the one who committed the offense.

26.    For example, in Mr. Hill's case, the case caption on the *Gerstein* was *US v. Felton Levan*

*Hill* (Mr. Hill's name) but the probable cause narrative of the *Gerstein* identified one Thomas Rodney Ramsey as the person who committed the offense.

27.     Sometimes the "defect" in the *Gerstein* is a jurisdictional defect, for example, it fails to establish that the offense occurred in the District of Columbia.

28.     Other times the defect is the omission of an essential element of an offense, for example, failure to allege that a person arrested for POCA actually possessed alcohol.[1]

29.     At the Initial Appearance in such cases, based on the four corners of the *Gerstein*, there is no way to know whether a defect in a *Gerstein* is a scrivener's error, or a failure in one of the essential elements of probable cause that the defendant committed an offense in the District.

### *Gerstein* "Perfection" Holds in Superior Court When the *Gerstein* Does Not Establish Probable Cause

30.     The District, through its Superior Court Judges or Magistrate Judges and its prosecutors, and its Department of Corrections, has developed a policy and practice of detaining arrestees at Initial Appearances even when the Judge or Magistrate Judge does not make an affirmative finding of probable cause during the Initial Appearance when the *Gerstein* is defective because the *Gerstein* does not establish probable cause.

31.     Instead of releasing an arrestee when the *Gerstein* is defective or retaining custody of the arrestee through its MPD or its DOC, the District's practice in the Superior Court is to ask the Superior Court Judge or Magistrate Judge to hold the arrestee until the next day court is in session under a *Gerstein* perfection hold.

---

[1] "POCA" means possession of an open container of alcohol in a prohibited place. D.C. Code § 25-1001(a)(1) *et seq.* is the District's POCA statute.

32.     Superior Court Magistrate Judge or Judges follow a statute and receive training which instructs them that if "If [the prosecutors] ask for the [twenty-four] hours, they get it."

33.     Under a *Gerstein* perfection hold the Magistrate Judge or Judge orders the arrestee held until the next court date to allow the government to "perfect" the *Gerstein*, that is, obtain a revised *Gerstein* that establishes probable cause.

34.     In an illogical twist of the purposes of the Fourth Amendment, if an arrestee such as the Plaintiffs, for whom the Magistrate Judge or Judge has not made an affirmative finding of probable cause but has ordered detained for a *Gerstein* perfection hearing, were to **concede** probable cause, the District grants them a bail hearing.

35.     But if such arrestees do as the Named Plaintiffs did, contest probable cause, the District holds them without bail and does not offer them a bail hearing.

### Defects in *Gersteins* Could Be Easily Remedied Within the Same Court Session

36.     The District's solution to a *Gerstein* that does not establish probable cause puts all the burden of a defective *Gerstein* on the arrestee when *Gerstein v. Pugh* puts it squarely on the government.

37.     There is no justification for imposing such a heavy burden — overnight detention and a strip-search — on the arrestee, especially where, as in this case, the arrest charge is a traffic offense or other minor offense.

38.     In this age of instant communications there are methods of either amending a defective *Gerstein* or ascertaining that there is no probable cause that do not require holding the arrestee overnight until the next session of court.

39.    For example, the prosecutor could arrange for a police officer to supply needed facts via phone, video, email, or fax during the same session of court in which the arrestee is presented.

40.    MPD officers remain on duty at all times and they can be reached at all times by the computers in their patrol cars, cell phones, or other means.

41.    For example, Fed. R. Crim. P. 4.1 allows a magistrate to issue a sworn complaint, warrant, or summons on "information communicated by telephone or other reliable electronic means."

42.    Using these or similar methods, a warrant could be sought and obtained or the application could be denied within a few hours and there would be no reason to commit the arrestee to the DC Jail and a vicious strip-search and an overnight detention while the prosecutor tries to either get a *Gerstein* that establishes probable cause or ascertains that the defect in the *Gerstein* is substantive.

### Prior to Initial Appearance, Arrestees Are Held at a District Station or at Central Cell Block

43.    Prior to Initial Appearance, arrestees are held at either one of the District stations or at Central Cell Block.

44.    Central Cell Block is a 24-hour seven days a week operation that processes, houses, feeds, and transports new adult arrestees in the District of Columbia.

45.    The Central Cell Block has the capacity to house arrestees overnight.

46.    Many of the arrestees held at Central Cell Block are held there overnight.

47.    Arrestees sometimes spend up to thirty six hours at Central Cell Block especially over

Sundays and three day holiday weekends.

48.     Central Cell Block is capable of holding 114 arrestees at any given time.

49.     The DOC stated in a written submission to the D.C. Council that on average, the Central Cell Block houses 75 arrestees during the weekdays and 90 on weekends.

50.     Pursuant to the Fiscal Year 2014 Budget Support Act of 2013, effective October 1, 2013, operational control of Central Cell Block transferred from MPD to DOC.

51.     Arrestees at the District stations and Central Cell Block are as a matter of policy not subjected to blanket or indiscriminate strip-searches; that is, the official written policy of these facilities is to strip-search arrestees only upon a finding of individualized reasonable suspicion.

**Persons Held for "*Gerstein* Perfection Holds" Are Held at the DC Jail and Subjected to Illegal and Humiliating Strip-Searches**

52.     Pursuant to a practice and policy of the government of the District of Columbia persons ordered held by Judges or Magistrate Judges for "*Gerstein* perfection holds" are transported by District of Columbia "DOC" (Department of Corrections) staff to the DC Jail for booking for detention in the DC Jail or CTF (Correctional Treatment Facility) instead of being held in a facility such as Central Cellblock or the "MHU" (the Medical Holding Unit of the DC Jail, a District of Columbia facility administered by the DOC which, among other things, holds court returns ordered released at their court hearings while the DOC administratively processes their release from DOC custody).

53.     Every single person booked at the DC Jail is pursuant to official written DOC policy subjected to degrading and humiliating blanket "indiscriminate" (*i.e.*, "suspicionless" strip-

searches administered to all intakes regardless of cause) strip searches conducted in the "R&D"

(Receiving and Discharge) areas which is the first post they encounter in the DC Jail as part of

the booking process regardless of whether they are going to the general population.

**54.** A DOC Sergeant described the strip-searches performed on arrestees like the Strip Search

Plaintiffs — what the corrections officers call the "dance" — as follows.

**55.** The intake stands on a piece of green carpet in front of a long table, takes all their clothes

off, and puts their clothes on the table.

**56.** The guards rifle the hair, pull the ears back, and then open the mouth wide and lift the

corners with their hands so that the guard can see left and right in the mouth.

**57.** Then the intake lifts their arms in the air so the guard can see the arm pits and the backs

of the arms.

**58.** Next the male intake lifts his genitals so the guards can see underneath and in between

the legs.

**59.** A similar procedure is used for female intakes.

**60.** "At that point, they'll turn around and bend over — and spread their buttocks with their

hands. Once that's done then they lift up their back feet, one, two, [the 'dance'] and it's over."

### Details of Ms. Lewis' Arrest and Detention for "*Gerstein* Perfection"

**61.** Ms. Lewis's contact with MPD began on Saturday, 11/1/2014 at 11:05 pm when she was

arrested by the MPD for suspicion of DUI (driving under the influence).

**62.** Ms. Lewis was presented in Superior Court on Monday, 11/3/2014 pursuant to D.C.

Super. Ct. Crim. Rule 5 after all "the administrative steps incident to [her] arrest" had been

completed.

**63.**     The Superior Court docket entry states that the probable cause hearing was held at 1:00 pm.

**64.**     An assistant attorney general (AAG) of the OAG-DC submitted a *Gerstein* and asked the Magistrate Judge or Judge for a five day "(a)(1)(A) hold," that is, to order Ms. Lewis held for a detention hearing pursuant to D.C. Code § 23–1322(a)(1)(A) which authorizes a discretionary hold.

**65.**     The Magistrate Judge *sua sponte* pointed out that the *Gerstein* had a defect, that is, the person named in the text of the *Gerstein* was not Ms. Lewis.

**66.**     Therefore, the *Gerstein* did not establish probable cause.

**67.**     But instead of releasing Ms. Lewis, the Magistrate Judge *sua sponte* asked the AAG, "You want 24 hours?"

**68.**     The AAG answered yes.

**69.**     Over the defense objection the Magistrate Judge ordered the 24 hour hold, saying, "If they ask for the 24 hours, they get it."

**70.**     When the defense suggested that the *Gerstein* perfection hold was discretionary, the Magistrate Judge stated, "I've read the statute, been here five years, been trained and — … [t]he bottom line is they get the 24 hours."

**71.**     As noted previously, had Ms. Lewis (and other plaintiffs) waived a probable cause finding, she would have been given more rights at that time — a bail hearing and possible release — than she was given without a finding of probable cause.

**72.**     As a result, without an affirmative finding of probable cause, the Magistrate Judge

ordered Ms. Lewis held until 1:00 pm on Tuesday 11/4/2014 without an opportunity to post bond

or argue for other conditions of release.

**73.**     As a result, officers of the DOC transported Ms. Lewis to the DC Jail.

**74.**     Ms. Lewis was admitted to the DC Jail for booking and as part of the intake process she

was subjected to a degrading and humiliating strip search even though no Magistrate Judge or

Judge had made an affirmative finding that there was probable cause that she had committed any

offense.

**75.**     Ms. Lewis spent the night in the DC Jail.

**76.**     The next morning, Tuesday 11/4/2014, officers of the District of Columbia Department

of Corrections returned Ms. Lewis to the Superior Court Courthouse.

**77.**     At some time after 1:00 pm on Tuesday 11/4/2014 Ms. Lewis appeared before the

Magistrate Judge and since the "government did not perfect the *[G]erstein*," as the docket entry

reads, the Magistrate Judge ordered Ms. Lewis released on personal recognizance.

**78.**     All told, from time of arrest on Saturday 11/1/2014 about 11:05 pm until time of release

on Tuesday 11/4/2014 about 1 pm, the District held Ms. Lewis in custody without a judicial

finding of probable cause for about 62 hours.

### Details of Mr. Hill's Arrest and Detention for "*Gerstein* Perfection"

**79.**     Mr. Hill's contact with MPD began on Tuesday, 7/8/2014 at about 1:10 am when he was

arrested by the MPD for suspicion of DUI (driving under the influence).

**80.**     Mr. Hill was presented in Superior Court on Tuesday, 7/8/2014 pursuant to D.C. Super.

Ct. Crim. Rule 5 after all "the administrative steps incident to [his] arrest" had been completed.

**81.**     The AAG submitted a *Gerstein* and asked the Magistrate Judge for a five day "(a)(1)(A) hold," that is, to order Mr. Hill held for a detention hearing pursuant to D.C. Code § 23–1322(a)(1)(A) which is a discretionary hold.

**82.**     But, as defense counsel pointed out, the *Gerstein* did not establish probable cause, because the probable cause narrative identified someone else as the wrongdoer.

**83.**     In response to the AAG's request the Magistrate Judge said, "Back tomorrow for a *Gerstein* perfection."

**84.**     So, instead of releasing Mr. Hill or at least giving him a bail hearing, and without making an affirmative finding of probable cause, the Magistrate Judge ordered Mr. Hill held until the next court session on the following day, Wednesday 7/9/2014, for a "24 Hour *Gerstein* perfection" to give the District an opportunity to "perfect the *Gerstein*."

**85.**     As a result, officers of the District of Columbia DOC transported Mr. Hill to the DC Jail.

**86.**     Mr. Hill was committed to the jail and as part of the intake process he was subjected to a degrading and humiliating strip search even though no Magistrate Judge or Judge had made an affirmative finding of probable cause that he had committed any offense.

**87.**     He spent the night in the DC Jail.

**88.**     The next morning, Wednesday 7/9/2014, officers of the District of Columbia DOC returned Mr. Hill to the Superior Court Courthouse.

**89.**     At some time after 4:00 pm on Wednesday 7/9/2014 Mr. Hill appeared before the Magistrate Judge or Judge and the AAG announced that the government was not "perfecting" the

*Gerstein* (the "OAG did not perfect the [G]erstein" as the docket entry reads).

90.    As a result, the Judge or Magistrate Judge ordered Mr. Hill released with conditions.

**Details of Ms. Kenion's Arrest and Detention for "*Gerstein* Perfection"**

91.    Ms. Kenion's contact with MPD began on 4/16/2012 between 9 p.n. and 11 p.m. when she was arrested by the MTD (Metro Transit Police) for suspicion of DUI (driving under the influence) and then handed off to the MPD at 6D for processing.[2]

92.    Ms. Kenion was taken to Central Cell Block where she spent the night in a cell with a bed. She was not strip-searched at 6D or at Central Cell Block.

93.    Ms. Kenion was presented in Superior Court on 4/17/2012 in case 2012 CTF 006596 pursuant to D.C. Super. Ct. Crim. Rule 5 after all "the administrative steps incident to [her] arrest" had been completed.

94.    The AAG submitted a *Gerstein* and asked the Judge or Magistrate Judge for a five day "(a)(1)(A) hold," that is, to order Ms. Kenion held for a detention hearing pursuant to D.C. Code § 23–1322(a)(1)(A) which is a discretionary hold.

95.    But, the *Gerstein* did not establish probable cause.

96.    Instead of releasing Ms. Kenion or at least giving her a bail hearing, and without making an affirmative finding of probable cause, the Judge or Magistrate Judge ordered Ms. Kenion held until the next court day for a "Gerstein perfection hold" or "A1C pending 24 Hour Gerstein perfection" as the docket reads to give the District an opportunity to "perfect the Gerstein."

---

[2] At the time of her arrest, Ms. Kenion's surname was Jackson and she appears in the CourtView data runs and the CourtView documents as Mary Jackson.

**97.**     As a result, officers of the District of Columbia DOC transported Ms. Kenion to the DC Jail.

**98.**     Ms. Kenion was booked and processed at the DC Jail and as part of the intake process she was subjected to a degrading and humiliating strip search even though no Judge or Magistrate Judge made an affirmative finding of probable cause that Ms. Kenion committed any offense.

**99.**     She spent the night in the CTF where she was strip-searched again upon admission to CTF.

**100.**     The next day, 4/18/2012, officers of the District of Columbia DOC returned Ms. Kenion to the Superior Court Courthouse.

**101.**     At some time on 4/18/2012 Ms. Kenion appeared before the Judge or Magistrate Judge and the OAG did perfect the *Gerstein* ("*Gerstein* perfected" as the docket entry reads).

**102.**     As a result, the Judge or Magistrate Judge ordered Ms. Kenion held.

**103.**     According to the District's own records Ms. Kenion was held for 62 hours from time of arrest to probable cause determination.

### Details of Mr. Howard's Arrest and Detention for "*Gerstein* Perfection"

**104.**     Mr. Howard's contact with MPD began on Tuesday 7/5/2014 when he was arrested by the MPD for suspicion of vending without a license.

**105.**     Mr. Howard was taken to a District station or Central Cell Block. He was not strip-searched at the police station or at Central Cell Block.

**106.**     Mr. Howard was presented in Superior Court on 7/7/2014 in case 2014 CDC 011863 pursuant to D.C. Super. Ct. Crim. Rule 5 after all "the administrative steps incident to [his]

arrest" had been completed.

**107.**    The AAG submitted a *Gerstein* and asked the Judge or Magistrate Judge for a five day

"(a)(1)(A) hold," that is, to order Mr. Howard held for a detention hearing pursuant to D.C. Code

§ 23–1322(a)(1)(A) which is a discretionary hold. But, the *Gerstein* did not establish probable

cause.

**108.**    Instead of releasing Mr. Howard or at least giving him a bail hearing, and without making

an affirmative finding of probable cause, the Judge or Magistrate Judge ordered Mr. Howard

held until the next court day for a "*Gerstein* perfection hold" or "1322 A1A pending 24 hour

*Gerstein* perfection" as the docket reads to give the District an opportunity to "perfect the

*Gerstein*."

**109.**    As a result, officers of the District of Columbia DOC transported Mr. Howard to the DC

Jail.

**110.**    Mr. Howard was booked and processed at the DC Jail and as part of the intake process he

was subjected to a degrading and humiliating strip search even though no Judge or Magistrate

Judge had made an affirmative finding of probable cause that he had committed any offense.

**111.**    He spent the night in the DC Jail.

**112.**    The next day, 7/8/2014, officers of the District of Columbia DOC returned Mr. Howard

to the Superior Court Courthouse.

**113.**    At some time on 7/8/2014 Mr. Howard appeared before the Judge or Magistrate Judge

and the OAG did perfect the *Gerstein* ("Gerstein was perfected, 1322 a1a denied" as the docket

entry reads) but the Judge or Magistrate Judge denied the request for a five day hold.

114.    As a result, the Judge or Magistrate Judge ordered Mr. Howard released on conditions.

115.    According to the District's own records Mr. Howard was held for at least 72 hours from time of arrest to probable cause determination.

**Details of Mr. Hamilton's Arrest and Detention for "*Gerstein* Perfection"**

116.    Mr. Hamilton's contact with MPD began on Tuesday 8/16/2013 at about 7 p.m. when he was arrested by the MPD for suspicion of DUI.

117.    Mr. Hamilton was taken to a District station and then to Central Cell Block where he spent the night in a cell on a bed. He was not strip-searched at the police station or at Central Cell Block.

118.    Mr. Hamilton was presented in Superior Court on 8/17/2013 in case 2013 CTF 014565 pursuant to D.C. Super. Ct. Crim. Rule 5 after all "the administrative steps incident to [his] arrest" had been completed on a charge of DUI and OWI, POCA, and violation of release conditions.

119.    The AAG submitted a *Gerstein* and asked the Judge or Magistrate Judge for a five day "(a)(1)(A) hold," that is, to order Mr. Hamilton held for a detention hearing pursuant to D.C. Code § 23–1322(a)(1)(A) which is a discretionary hold.

120.    But, the *Gerstein* did not establish probable cause.

121.    Instead of releasing Mr. Hamilton or at least giving him a bail hearing, and without making an affirmative finding of probable cause, the Judge or Magistrate Judge ordered Mr. Hamilton held until the next court day, for a "*Gerstein* perfection hold" or "1322 A1A pending 24 hour *Gerstein* perfection" as the docket reads to give the District an opportunity to "perfect

the *Gerstein*."

**122.**   As a result, officers of the District of Columbia DOC transported Mr. Hamilton to the DC Jail.

**123.**   Mr. Hamilton was booked and processed at the DC Jail and as part of the intake process he was subjected to a degrading and humiliating strip search even though no Judge or Magistrate Judge had made an affirmative finding of probable cause that he had committed any offense.

**124.**   He spent the night in the DC Jail.

**125.**   On 8/19/2013, officers of the District of Columbia DOC returned Mr. Hamilton to the Superior Court Courthouse.

**126.**   At some time on 8/19/2013 Mr. Hamilton appeared before the Judge or Magistrate Judge and the Judge ordered Mr. Hamilton released on conditions.

**127.**   According to the District's own records Mr. Hamilton was held for at least 64 hours from time of arrest to probable cause determination.

### Details of Mr. Montgomery's Arrest and Detention for "*Gerstein* Perfection"

**128.**   Mr. Montgomery's contact with MPD began on Tuesday 12/7/2012 when he was arrested by the MPD for suspicion of DUI.

**129.**   Mr. Montgomery was taken to a District station and then to Central Cell Block. He was not strip-searched at the police station or at Central Cell Block.

**130.**   Mr. Montgomery was presented in Superior Court on 12/7/2012 in case 2012 CTF 020921 pursuant to D.C. Super. Ct. Crim. Rule 5 after all "the administrative steps incident to [his] arrest" had been completed on a charge of DUI and OWI, POCA, and violation of release

conditions.

131.   The AAG submitted a *Gerstein* and asked the Judge or Magistrate Judge for a five day

"(a)(1)(A) hold," that is, to order Mr. Montgomery held for a detention hearing pursuant to D.C.

Code § 23–1322(a)(1)(A) which is a discretionary hold.

132.   As a result, officers of the District of Columbia DOC transported Mr. Montgomery to the

DC Jail.

133.   Mr. Montgomery was booked and processed at the DC Jail and as part of the intake

process he was subjected to a degrading and humiliating strip search even though no Judge or

Magistrate Judge had made an affirmative finding of probable cause that he had committed any

offense.

134.   When he was going through the "medical" phase of the intake process in the DC Jail he

was transported to Greater Southeast Community Hospital in the District. He was held in a lock-

up in the basement on a gurney with his hands and feet strapped to the gurney. His hands were

released only for meals and certain other limited periods.

135.   On 12/18/2012, more than 10 days later, officers of the District of Columbia returned Mr.

Montgomery to the Superior Court Courthouse.

136.   At some time on 12/18/2012 Mr. Montgomery appeared before the Judge or Magistrate

Judge and the Judge ordered Mr. Montgomery released on conditions.

137.   The docket entry for the 12/18/2012 hearing reads, "*Gerstein* Perfected and Detention

Hearing waived," and the "24 Hour *Gerstein* Perfection scheduled for 12/18/2012 at 11:30 am

has been resulted as follows," "Bond status changed from detention to release."

**138.**     According to the District's own records Mr. Montgomery was held for at least 273.6 hours from time of arrest to probable cause determination.

### Details of Mr. Barkley's Arrest and Detention for "*Gerstein* Perfection"

**139.**     Mr. Barkley's contact with MPD began on Tuesday 3/20/2014 at about 9:30 p.m. when he was arrested by the MPD for suspicion of DUI, Operating a Vehicle While Impaired, and No Permit.

**140.**     Mr. Barkley was taken to a District station and then to Central Cell Block. He was not strip-searched at the police station or at Central Cell Block.

**141.**     Mr. Barkley was presented in Superior Court on 3/21/2014 in case 2014 CTF 004880 pursuant to D.C. Super. Ct. Crim. Rule 5 after all "the administrative steps incident to [his] arrest" had been completed on charges of DUI and OWI, POCA, and violation of release conditions.

**142.**     The AAG submitted a *Gerstein* and asked the Judge or Magistrate Judge for a five day "(a)(1)(A) hold," that is, to order Mr. Barkley held for a detention hearing pursuant to D.C. Code § 23–1322(a)(1)(A) which is a discretionary hold.

**143.**     But, the *Gerstein* did not establish probable cause.

**144.**     But, instead of releasing Mr. Barkley or at least giving him a bail hearing, and without making an affirmative finding of probable cause, the Judge or Magistrate Judge ordered Mr. Barkley held until the next court day, for a "*Gerstein* perfection hold" or "1322 A1A pending 24 hour *Gerstein* perfection" as the docket reads to give the District an opportunity to "perfect the *Gerstein*."

FOURTH AMENDED COMPLAINT • *LEWIS, ET AL. V. DISTRICT OF COLUMBIA*

**145.**     As a result, officers of the District of Columbia DOC transported Mr. Barkley to the DC Jail.

**146.**     Mr. Barkley was booked and processed at the DC Jail and as part of the intake process he was subjected to a degrading and humiliating strip search even though no Judge or Magistrate Judge had made an affirmative finding of probable cause that he had committed any offense.

**147.**     The next day, 3/22/2014, Mr. Barkley was taken to Superior Court and he appeared before Judge Mott and Judge Mott ordered Mr. Barkley released on conditions.

**148.**     The docket entry for the 3/22/2014 hearing reads, "*Gerstein* didn't need to perfected, *Gerstein* was supposed to be two pages but only one page was given when originally arraigned - probable cause found," and the "1322 A1A Denied."

**149.**     According to the District's own records Mr. Barkley was held for at least 41.6 hours from time of arrest to probable cause determination.

## SUBSTANTIVE ALLEGATIONS FOR CLAIMS

### Claim 1

### § 1983 Liability of District of Columbia under the Fourth Amendment for Illegal Holds

**150.**     The Plaintiffs adopt by reference the contents of the preceding paragraphs as if fully set forth herein.

**151.**     Each of the Illegal Hold Named Plaintiffs and Class was arrested without a warrant and charged with on one or more "D.C. Code offenses" but no offenses described in D.C. Code § 23-1322(b)(2),( 3) or (4) or D.C. Code § 23-1325.

**152.**    The District of Columbia violated the Fourth Amendment rights of the Illegal Hold Named Plaintiffs and Class by holding them pursuant to Code § 23-1322(a) more than 48 hours after their arrest without a finding of probable cause by a Magistrate Judge or Judge.

**153.**    The District government had a policy or custom of holding *Gerstein* perfection hold arrestees more than 48 hours from time of arrest without providing a probable cause determination before a neutral magistrate.

**154.**    The District of Columbia held the Illegal Hold Named Plaintiffs and Class more than 48 hours from time of arrest without providing a probable cause determination before a neutral magistrate pursuant to its policy or custom of holding *Gerstein* perfection hold arrestees more than 48 hours from time of arrest without providing a probable cause determination before a neutral magistrate.

**155.**    The District government knew or should have known about a practice that was consistent enough to create a custom.

**156.**    The District government failed to take steps to prevent the Constitutional violations.

**157.**    The failure of the District government to respond to a need showed "deliberate indifference" to the risk that not addressing the need would result in Constitutional violations.

**158.**    The District's policy or custom here reflects a deliberate indifference to the obvious consequences of its holding *Gerstein* perfection hold arrestees longer than 48 hours without a judicial finding of probable cause.

**159.**    As a result, each of the Illegal Hold Named Plaintiffs and Class suffered Unconstitutional detentions, and other injuries

**160.**    Accordingly, each of the Illegal Hold Named Plaintiffs and Class is entitled to damages and other relief as set forth below.

## [Claim 2 omitted]

## Claim 3

### § 1983 Liability of District of Columbia under the Fourth Amendment for Illegal Strip-searches

**161.**    The Plaintiffs adopt by reference the contents of the preceding paragraphs as if fully set forth herein.

**162.**    Each of the Illegal Strip Search Named Plaintiffs and Class was a *Gerstein* perfection hold arrestee.

**163.**    Each of the Illegal Strip Search Named Plaintiffs and Class appeared in the Superior Court for an Initial Appearance on "minor" offenses under the *Florence* exception such as "District" offenses and misdemeanors not involving an allegation of drugs, weapons or violence.

**164.**    Each of the Illegal Strip Search Named Plaintiffs and Class could have been held in an area outside the general population of the DC Jail or CTF.

**165.**    The Department of Corrections has an official policy of "blanket" strip-searching (that is strip-searching them without any individualized finding of reasonable suspicion that he or she was concealing a weapon or other contraband) all prisoners entering the DC Jail at the "R&D" post, the Receiving & Discharge post, which is the first area a prisoner enters upon entering the DC Jail.

**166.**    The District government strip-searched the Illegal Strip Search Named Plaintiffs and

Class pursuant to the DOC's official indiscriminate blanket strip-search policy for intakes at the DC Jail.

167.    Applying the DOC's official indiscriminate blanket strip-search policy to the Illegal Strip Search Named Plaintiffs and Class violated their Fourth Amendment rights.

168.    The strip-search policy was the moving force behind the violations of the Illegal Strip-Search Class members' Fourth Amendment rights.

169.    The District government had a custom of holding *Gerstein* perfection hold arrestees at the DC Jail or CTF and applying the DOC's blanket strip search policy to them even though they were *Gerstein* perfection hold arrestees who met the requirements of the *Florence* exception.

170.    The District government knew or should have known about a practice that was consistent enough to create a custom.

171.    The District government failed to take steps to prevent the Constitutional violations

172.    The failure of the District government to respond to a need showed "deliberate indifference" to the risk that not addressing the need would result in Constitutional violations.

173.    As a result, each of the Illegal Strip Search Named Plaintiffs and Class suffered unconstitutional, degrading and humiliating strip-searches, and other injuries.

174.    Accordingly each of the Illegal Strip Search Named Plaintiffs and Class is entitled to damages and other relief as set forth below.

## Rule 23 Class Allegations

175.    Each Named Plaintiff on behalf of themselves and the persons described in the Illegal Hold Class and the Illegal Strip Search Class bring this action under Rules 23(a), 23(b) (2) and

23(b)(3) of the Federal Rules of Civil Procedure.

**176.    The Illegal Hold Class**: Kayla Dionne Lewis, Mary Kenion, Dwayne Howard, Rollie

Montgomery and Rodney Hamilton bring this class claim under Rules 23(a), 23(b) (2) and

23(b)(3) of the Federal Rules of Civil Procedure on behalf of themselves and a class consisting

of:

> **E**ach person who:

> (1)    in the period beginning three years before the date of filing of the original complaint in this case and going forward until the case is terminated;

> (2)    was arrested without a warrant and charged with on one or more "D.C. Code offenses" but no offenses described in D.C. Code § 23-1322(b)(2),( 3) or (4) or D.C. Code § 23-1325;

> (3)    was, after their Initial Appearance in Superior Court of the District of Columbia, detained on a "*Gerstein* perfection hold" pursuant to D.C. Code § 23-1322(a) even though the *Gerstein* proffered by the District prosecutor did not establish probable cause;

> (4)    was held more than 48 hours after arrest without a probable cause determination;

> (5) pursuant to the District's policy or custom of holding *Gerstein* perfection hold arrestees more than 48 hours from time of arrest without providing a probable cause determination before a neutral magistrate.

**177.    The Illegal Strip Search Class**: Kayla Dionne Lewis, Felton Hill, Mary Kenion,

Dwayne Howard, Rollie Montgomery, Rodney Hamilton and Tyrell Barkley bring this class

claim under Rules 23(a), 23(b) (2) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf

of a class consisting of:

> Each person who:

> (1)    in the period beginning three years before the date of filing of the original complaint in this case and going forward until the case is terminated;

> (2)    was arrested without a warrant appeared in the Superior Court for an

Initial Appearance on "minor" offenses under the *Florence* exception such as "District" offenses and misdemeanors not involving an allegation of drugs, weapons or violence, and no other offenses;

(3)    was, after the Initial Appearance in Superior Court of the District of Columbia, detained on a "*Gerstein* perfection hold;

(3)    was then admitted to the DC Jail and subjected to a strip-search;

(4)    the strip-search was conducted and/or performed pursuant to the Department of Corrections' official policy of automatically strip-searching every prisoner who enters the DC Jail (*i.e.*, without any individualized finding of reasonable suspicion that they were concealing a weapon or other contraband);

(5)    even though the person could have been held in an area outside the general population of the DC Jail or CTF.

178.    Certification of each of the classes under Federal Rule of Civil Procedure 23(b)(2) is appropriate, because the District of Columbia has a policy and practice for each claim that has uniformly affected all members the class, and injunctive relief and declaratory judgment and a judgment against the District will benefit each and every plaintiff and class member.

179.    The Named Plaintiffs and the classes are entitled to injunctive relief including an injunction prohibiting the District from holding *Gerstein* perfection hold arrestees for longer than 48 hours without probable cause determinations and applying its blanket strip search policy to Illegal Strip Search Class members who satisfy the *Florence* exception.

180.    Certification of each of the classes under Federal Rule of Civil Procedure 23(b)(3) is also appropriate, in that common questions of law and fact predominate over any individual questions in each of the classes, and class action treatment is superior for the fair and efficient adjudication of each of these class claims as detailed below.

181.    Each member of these classes is entitled to monetary relief.

182.    Regarding Kayla Dionne Lewis, Felton Hill, Mary Kenion, Dwayne Howard, Rollie

Montgomery, Rodney Hamilton and Tyrell Barkley and each member of the classes, there are no individual questions on the issue of liability, because all members of each of these classes are injured by the same policy and practices.

**183.**    Among the questions of law and fact common to the classes are:

    **a)**    whether the District through its Magistrate Judge or Judges has a policy and practice of holding arrestees on "*Gerstein* perfection holds" for more than 48 hours without probable cause determinations;

    **b)**    whether the District of Columbia violated the Fourth Amendment rights of the Illegal Strip Search Class by subjecting them to the DOC's blanket strip-search policy at the DC Jail after being ordered held on a "*Gerstein* perfection hold";

    **c)**    whether the Named Plaintiffs and the members of the classes and future members are entitled to equitable relief, and, if so, what is the nature of that relief;

    **d)**    whether the Named Plaintiffs and the other class members are entitled to "general" damages for illegal detention and for illegal strip-searches.

**184.**    Each of the Illegal Hold Class and the Strip Search Class is so numerous that joinder of all members is impracticable. The exact number of the members of each of the Illegal Hold Class and the Strip Search Class is unknown to plaintiffs at this time but the number of arrestees held on "*Gerstein* perfection" holds for "*Gerstein* perfection" hearings each year numbers at least 50.

**185.**    Each claim of the Named Plaintiffs of the Illegal Hold Class is typical of the claims of each of the members of the Illegal Hold Class because they and all other members of each of the Illegal Hold Class were injured by exactly the same means, the District government's

unconstitutional practice, the District government's practice or custom of holding them more than 48 hours without probable cause determinations.

186.     Each claim of the Named Plaintiffs of the Illegal Strip Search Class is typical of the claims of each of the Strip Search Class because they and all other members of the Strip Search Class were injured by exactly the same means, the District government's unconstitutional practice of applying the blanket strip search policy to them when they met all three requirements for the *Florence* exception.

187.     The Named Plaintiffs on behalf of themselves and the other members of each of the Illegal Hold Class and the Strip Search Class will fairly and adequately protect the interests of the members of each of the Illegal Hold Class, and the Strip Search Class and they have retained counsel who are competent and experienced in complex federal civil rights class action litigation.

188.     The Named Plaintiffs on behalf of themselves and each of the Illegal Hold Class and the Strip Search Class have no interests that are contrary to or in conflict with those of the Classes.

## Class Relief Demands

Each Named Plaintiff (Kayla Dionne Lewis, Felton Hill, Mary Kenion, Dwayne Howard, Rollie Montgomery, Rodney Hamilton and Tyrell Barkley) on behalf of themselves and all other members of the Classes respectfully request that this Court grant the following relief:

A.     Enter judgment in their favor on all of their claims;

B.     Declare that holding *Gerstein* perfection hold arrestees for more than 48 hours without a probable cause determination violates the Fourth Amendment.

C.     Declare that the District's strip-search policy and practices described above are

unconstitutional under the Fourth Amendment as applied to *Gerstein* perfection hold arrestees who meet the *Florence* exception such as members of the Illegal Strip Search Class.

**D.**     Award each Named Plaintiff and the other class members' nominal damages in connection with any declaration that the District government's custom or practice of holding Illegal Hold class members more than 48 hours and its policy or practice of applying its blanket strip search policy to Illegal Strip Search Class members are unconstitutional.

**E.**     Grant a jury trial on all claims so triable.

**F.**     Declare that this action may be maintained as a class action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) and certifying the Illegal Hold Class and designating each Named Plaintiff of the class as the proper representative of the Illegal Hold Class and appointing William Claiborne and Sean R. Day as class counsel.

**G.**     Declare that this action may be maintained as a class action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) and certifying the Strip Search Class and designating Each Named Plaintiff of the class as the proper representatives of the Strip Search Class and appointing William Claiborne and Sean R. Day as class counsel.

**H.**     Declare that this action may be maintained as a class action pursuant to Federal Rule of Civil Procedure 23(a), 23(b) (2) and 23(b)(3).

**I.**     Award each Named Plaintiff and all the other class members compensatory and consequential damages in an amount to be determined at trial;

**J.**     Award each Named Plaintiff incentive payments for serving as class representatives;

**K.**     Award plaintiffs attorneys' fees and costs incurred in bringing this action under 42 U.S.C.

§ 1988 or as determined under the "common fund" rule; and

**L.**     Grant such other relief as this Court deems just and proper.

Respectfully submitted,

/s/ William Claiborne
WILLIAM CLAIBORNE
D.C. Bar # 446579
717 D Street, N.W., Ste 300
Washington, DC 20004
claibornelaw@gmail.com
202-824-0700

/s/Sean R. Day/s/
Sean R. Day
D.C. Bar No. 452420
7474 Greenway Center Dr Ste 150
Greenbelt MD 20770-3524
Sean@DayInCourt.Net
301.220.2270

Attorneys for Plaintiff

## JURY DEMAND

Plaintiffs demand a jury of six as to all claims so triable.

/s/William Claiborne
WILLIAM CLAIBORNE
D.C. Bar # 446579
Counsel for Plaintiffs
and the Classes