## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| KAYLA DIONNE LEWIS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | Civil Action No. 15-352 (RBW) |
| | ) | |
| DISTRICT OF COLUMBIA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## <u>MEMORANDUM OPINION</u>

The plaintiffs, Kayla Dionne Lewis, Felton Hill, Mary Kenion, Dwayne Howard, Rollie Montgomery, Rodney Hamilton, and Tyrell Barkley, bring this putative class action against the defendant, the District of Columbia (the "District"), pursuant to 42 U.S.C. § 1983. See Fourth Amended Complaint ("4th Am. Compl."), ECF No. 140. Currently pending before the Court is the District's partial motion to dismiss the Fourth Amended Complaint. See Defendant's Partial Motion to Dismiss Plaintiffs' Fourth Amended Complaint ("Def.'s Mot.") at 1, ECF No. 141. Upon careful consideration of the parties' submissions,[1] the Court concludes for the following reasons that it must grant in part and deny in part the District's motion.

## I.    BACKGROUND

The Court discussed the factual background of this case in its earlier Memorandum Opinions, issued on June 27, 2016, see Lewis v. District of Columbia ("Lewis I"), 195 F. Supp.

---

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Memorandum of Points and Authorities in Support of Defendant's Partial Motion to Dismiss Plaintiffs' Fourth Amended Complaint ("Def.'s Mem."), ECF No. 141-1; (2) the Plaintiffs' Opposition to Defendant's Partial Motion to Dismiss ("Pls.' Opp'n"), ECF No. 143; (3) the Defendant's Reply in Support of Partial Motion to Dismiss Plaintiffs' Fourth Amended Complaint ("Def.'s Reply"), ECF No. 145; (4) the Plaintiffs' Notice Withdrawing Their Opposition to District's Motion to Dismiss Ms. Kenion's Overdetention Claim ("Pls.' 1st Notice"), ECF No. 146; (5) the Plaintiffs' Notice in Response to Court's Order [ECF No. 149] ("Pls.' 2d Notice"), ECF No. 150; and (6) the Defendant's Response to Plaintiffs' Notice ("Def.'s Resp."), ECF No. 151.

3d 53, 56–57 (D.D.C. 2016) (Walton, J.); March 7, 2018, <u>see</u> <u>Lewis v. District of Columbia</u> ("<u>Lewis II</u>"), 324 F.R.D. 296 (D.D.C. 2018) (Walton, J.); October 8, 2019, <u>see</u> <u>Lewis v. District of Columbia</u> ("<u>Lewis III</u>"), 417 F. Supp. 3d 74 (D.D.C. 2019) (Walton, J.); and September 3, 2020, <u>see</u> <u>Lewis v. District of Columbia</u> ("<u>Lewis IV</u>"), Civil Action No. 15-352, 2020 WL 5254976 (D.D.C. Sept. 3, 2020) (Walton, J.) and, therefore, it will not reiterate those facts again here.  The Court will, however, briefly discuss the claims asserted by the plaintiffs—namely, their illegal hold and strip search claims—and the procedural posture of this case, which are relevant to the resolution of the pending motion.

## A.      The Plaintiffs' Illegal Hold Claims

In support of their illegal hold claims, the plaintiffs allege that the District has a policy and practice of detaining arrestees for longer than forty-eight hours, in violation of <u>Gerstein v. Pugh</u>, 420 U.S. 103 (1975), and <u>County of Riverside v. McLaughlin</u>, 500 U.S. 44, 56 (1991).[2]

---

[2] As the Court noted in <u>Lewis I</u>,

> [w]hile "a policeman's on-the-scene assessment of probable cause provides legal justification for arresting a person suspected of crime," <u>Gerstein</u>, 420 U.S. at 113–14, "the Fourth Amendment requires a timely judicial determination of probable cause as a prerequisite to detention," <u>id.</u> at 126. "[A] jurisdiction that provides judicial determinations of probable cause within [forty-eight] hours of arrest will, as a general matter, comply with the promptness requirement of <u>Gerstein</u>." <u>Cty. of Riverside v. McLaughlin</u>, 500 U.S. 44, 56 (1991). And where the arrested individual is detained for more than forty-eight hours without a judicial determination of probable cause, "the burden shifts to the government to demonstrate the existence of a <u>bona fide</u> emergency or other extraordinary circumstance." <u>Id.</u> at 57; <u>see also</u> <u>Cherrington v. Skeeter</u>, 344 F.3d 631, 644 (6th Cir. 2003) ("[T]he undisputed record establishes a violation of <u>Riverside</u>'s [forty-eight]–hour rule, and [the] [d]efendants have failed to identify any emergency or other extraordinary circumstance that might take this case outside of the general rule.").

> "Under <u>Gerstein</u>, jurisdictions may choose to combine probable cause determinations with other pretrial proceedings, . . . such as bail hearings and arraignments." <u>Riverside</u>, 500 U.S. at 58. The Eighth Amendment prohibits "excessive bail," U.S. Const. amend. VIII, and while the Amendment "says nothing about whether bail shall be available at all," <u>United States v. Salerno</u>, 481 U.S. 739, 752 (1987), "[a] prompt hearing is necessary" because "a vital liberty interest is at stake," <u>United States v. Montalvo–Murillo</u>, 495 U.S. 711, 716 (1990).  Although the Supreme Court has not imposed a specific time-limit by which a bail hearing must be conducted, lower courts have used <u>Riverside</u>'s forty-eight[-]hour limitation as a useful guidepost.  <u>See, e.g.</u>, <u>Collins v. Ainsworth</u>, 382 F.3d 529, 545 (5th Cir. 2004) ("There is no right to post bail within [twenty-four] hours of arrest. Mississippi law indicates that this limitation is [forty-eight] hours."); <u>Holder</u>

(continued . . .)

<u>See</u> 4th Am. Compl. ¶ 155.  According to the plaintiffs, arrestees are "taken to the [District of Columbia] Superior Court for an [i]nitial [a]ppearance after 'the administrative steps incident to arrest' have been completed pursuant to Superior Court Rule of Criminal Procedure [5.]"  <u>Id.</u> ¶ 20.  The plaintiffs allege that, when "the government seeks to hold [an] arrestee on a five[-]day hold pursuant to D.C. Code § 23-1322(a)[,[3] which, <u>inter alia</u>, authorizes the five-day detention of individuals arrested while serving a term of supervised release,] the government must establish probable cause as a predicate to the five[-]day hold."  <u>Id.</u> ¶ 23.  According to the plaintiffs, "[i]n the Superior Court[,] the practice is that [ ] prosecutors requesting detention present the probable cause facts to the Magistrate Judge or Judge in a sworn affidavit made by one of the arresting officers[,]" which the plaintiffs refer to as a "<u>Gerstein</u>" affidavit, <u>id.</u> ¶ 24.

The plaintiffs allege that, "[s]ometimes for various reasons[,] the <u>Gerstein</u> [affidavit] has a 'defect,' that is, the <u>Gerstein</u> [affidavit] does not have enough information to establish probable cause to believe that an offense has been committed or that a particular arrestee is the one who committed the offense."  <u>Id.</u> ¶ 25.  The plaintiffs further allege that the District, "through its Superior Court Judges or Magistrate Judges and its prosecutors, and its Department of Corrections, has developed a policy and practice[,]" <u>id.</u> ¶ 30, of "ask[ing] the Superior Court Judge or Magistrate Judge to hold the arrestee until the next day court is in session under a

_____

(. . . continued)

　　　　v. Town of Newton, No. 08–CV–197–JL, 2010 WL 432357, at *11 (D.N.H. Feb. 3, 2010) ("The clear import of <u>McLaughlin</u>, then, is that a bail hearing held within [forty-eight] hours of a warrantless arrest is also presumptively constitutional—if indeed the Constitution speaks to that issue.").

<u>Lewis I</u>, 195 F. Supp. 3d at 58–59.

[3] D.C. Code § 23-1322(a) authorizes a five-day detention of a "person charged with an offense . . . if the judicial officer determines that the [charged] person" is a flight risk and, "at the time the offense was committed, [was] on [either] (A) [r]elease pending trial for a felony or misdemeanor under local, state, or federal law; (B) [r]elease pending imposition or execution of a sentence, appeal of sentence or conviction, or completion of sentence, for any offense under local, state, or federal law; or (C) [p]robation, parole or supervised release for an offense under local, state, or federal law[.]"  D.C. Code § 23-1322(a).

[so-called] <u>Gerstein</u> perfection hold[,]" <u>id.</u> ¶ 31.  Through the use of this practice, "the Magistrate Judge or Judge orders the arrestee held until the next court date to allow the government to 'perfect' the <u>Gerstein</u> [affidavit], that is, obtain a revised <u>Gerstein</u> [affidavit] that establishes probable cause."  <u>Id.</u> ¶ 33.  The plaintiffs contend that the "Superior Court Magistrate Judge [and] Judges follow a statute and receive training [that] instructs them that if '[ ] [the prosecutors] ask for the [twenty-four] hours, they get it."  <u>Id.</u> ¶ 32.

## B.     The Plaintiffs' Illegal Strip Search Claims

The plaintiffs' illegal strip search claims allege that the District violated their Fourth Amendment rights by "strip-search[ing]" them "pursuant to the [Department of Corrections'] official indiscriminate blanket strip-search policy for intakes at the [District of Columbia] Jail [(the "DC Jail"),]" <u>id.</u> ¶ 166, "even though they were <u>Gerstein</u> perfection hold arrestees who met the requirements of the [ ] exception" to blanket strip-search policies under <u>Florence v. Board of Chosen Freeholders</u>, 566 U.S. 318 (2012), <u>id.</u> ¶ 169.[4]  Specifically, the plaintiffs allege that

---

[4] As the Court noted in <u>Lewis I</u>, "[h]istorically, the Supreme Court has recognized '[t]he difficulties of operating a detention center' and [has] explained that 'a regulation impinging on an inmate's constitutional rights must be upheld 'if it is reasonably related to legitimate penological interests.''"  <u>Lewis I</u>, 195 F. Supp. 3d at 63 (quoting <u>Florence</u>, 566 U.S. at 318).  When considering whether strip searches are "reasonably related to legitimate penological interests[,] . . . [c]ourts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted[,]" in order to "balance[e] [ ] the need for the particular search against the invasion of personal rights that the search entails."  <u>Id.</u>

In <u>Florence</u>, "the Supreme Court ruled that 'security imperatives involved in jail supervision override the assertion that some detainees must be exempt from the more invasive search procedures at issue absent reasonable suspicion of a concealed weapon or other contraband[,]" and therefore, "every detainee who will be admitted to the general population [of a jail] may be required to undergo a close visual inspection while undressed."  <u>Id.</u>  However, as this Court noted in <u>Lewis I</u>:

The Justices who composed the majority in <u>Florence</u> did not agree with all aspects of the majority opinion.  Justice Kennedy delivered the opinion of the Court with Justices Roberts, Scalia, and Alito joining in full, and Justice Thomas joining the opinion except with respect to Part IV.  Part IV limited <u>Florence</u>'s holding, explaining that there may be circumstances in which such search policies could be unreasonable[ and noting] that the facts of <u>Florence</u> did not require the Court to consider situations where, for example: "a detainee will be held without assignment to the general jail population and without substantial contact with other detainees"; "an arrestee['s] detention has not yet been reviewed by a magistrate or other judicial officer, and [the arrestee] can be held in

(continued . . .)

"persons ordered held by Judges or Magistrate Judges for 'Gerstein perfection holds' are transported by . . . []Department of Corrections[] staff to the DC Jail . . . for detention in the DC Jail or [ ] []Correctional Treatment Facility[ ("CTF"),]" instead of the "Central Cellblock"[5] or the "Medical Holding Unit of the DC Jail[.]"[6]  4th Am. Compl. ¶ 52.  According to the plaintiffs, "pursuant to official written [Department of Corrections] policy[,]" "[e]very single person booked at the DC Jail is . . . subjected to [a] degrading and humiliating blanket 'indiscriminate' . . . strip search[,]" i.e., a "'suspicion[-]less' strip-search [ ] administered to all intakes regardless of cause[.]" Id. ¶ 53.  The plaintiffs assert that they were subject to such strip-searches due to the District's "custom of holding Gerstein perfection hold arrestees at the DC Jail or CTF and applying the [Department of Corrections'] blanket strip search policy to them even though . . . Gerstein perfection hold arrestees [ ] me[e]t the requirements of the Florence exception." Id. ¶ 169.

---

(. . . continued)

available facilities removed from the general population"; "officers engag[e] in intentional humiliation and other abusive practices"; and "searches . . . involve the touching of detainees." Justices Roberts and Alito each issued concurrences indicating that their decisions were predicated on the inclusion of Part IV . . .  Particularly pertinent to the present case, Justice Alito elaborated on Part IV, explaining that

> the Court does not hold that it is always reasonable to conduct a full strip search of an arrestee whose detention has not been reviewed by a judicial officer and who could be held in available facilities apart from the general population. Most of those arrested for minor offenses are not dangerous, and most are released from custody prior to or at the time of their initial appearance before a magistrate. In some cases, the charges are dropped. In others, arrestees are released either on their own recognizance or on minimal bail. In the end, few are sentenced to incarceration. For these persons, admission to the general jail population, with the concomitant humiliation of a strip search, may not be reasonable, particularly if an alternative procedure is feasible.

Id. at 63–64.

[5] The plaintiffs allege that the Central Cell Block "is a [twenty-four-hour[,] seven[-]days[-]a[-]week operation that processes, houses, feeds, and transports new adult arrestees in the District of Columbia." 4th Am. Compl. ¶ 44.

[6] The plaintiffs describe the Medical Holding Unit as "a District . . . facility administered by the [Department of Corrections that], among other things, holds court returns ordered released at their court hearings while the [Department of Corrections] administratively processes their release from [ ] custody[]."  4th Am. Compl. ¶ 52.

The plaintiffs further allege that the District applied its custom of holding them at the DC Jail or CTF despite that fact that the Central Cell Block "has the capacity to house arrestees overnight[,]" id. ¶ 44, and the Department of Corrections "stated in a written submission to the [District of Columbia] Council that[,] on average, the Central Cell Block houses 75 arrestees during the weekdays and 90 [arrestees] on weekends[,]" id. ¶ 49, despite being "capable of holding 114 arrestees at any given time[,]" id. ¶ 48.

## C.    Procedural Posture

The Court now turns to the relevant procedural posture of this case.  In Lewis IV, the Court denied without prejudice the plaintiffs' motion for class certification because (1) they "ha[d] failed to establish that the proposed . . . class [of plaintiffs for their illegal hold claims] is so numerous that joinder of all members is impracticable" and (2) they "c[ould not] establish liability on a class-wide basis for the proposed . . . class [of plaintiffs for their illegal strip search claims], as the class [wa]s currently defined[,] and therefore [ ] failed to show that common issues predominate over individual issues."  Lewis IV, 324 F.R.D. at *5; see Order (Sept. 3, 2020), ECF No. 125.  Thereafter, the Court set a briefing schedule for the plaintiffs to file a renewed motion for class certification, see Order at 1 (Sept. 24, 2020), ECF No. 128, however, prior to the date by which the plaintiffs were directed to file their renewed motion for class certification, the plaintiffs instead moved for leave to file a Fourth Amended Complaint, see Motion to Amend/Correct Complaint at 1, ECF No. 129.  The plaintiffs' Fourth Amended Complaint, inter alia, "add[ed] absent class members Mary Kenion, Dwayne Howard, Rollie Montgomery, Rodney Hamilton[,] and Tyrell Barkley as plaintiffs named in the [C]omplaint[.]"  Id. at 3.  On February 3, 2021, the Court granted the plaintiffs' motion for leave to further amend

the Complaint and issued a briefing schedule for the District to file a fifth motion to dismiss.  <u>See</u> Order (Feb. 3, 2021), ECF No. 139.

On March 5, 2021, the District filed its motion, moving to dismiss in part the Fourth Amended Complaint.  <u>See</u> Def.'s Mot. at 1.  On April 5, 2021, the plaintiffs filed their opposition, <u>see</u> Pls.' Opp'n at 1, and, on May 3, 2021, the District filed its reply, <u>see</u> Def.'s Reply at 1.  On January 10, 2022, the Court conducted a hearing on the District's motion and took the motion under advisement.  <u>See</u> Order at 1 (Jan. 12, 2022), ECF No. 149.

## II.      STANDARD OF REVIEW

A Rule 12(b)(6) motion tests whether a complaint "state[s] a claim upon which relief can be granted[.]"  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged."  <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 556).

In evaluating a motion to dismiss under Rule 12(b)(6), "the Court must construe the complaint 'in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged.'"  <u>Hettinga v. United States</u>, 677 F.3d 471, 476 (D.C. Cir. 2012) (quoting <u>Schuler v. United States</u>, 617 F.2d 605, 608 (D.C. Cir. 1979)).  While the Court must "assume the[] veracity" of any "well-pleaded factual allegations" in a complaint, conclusory allegations "are not entitled to the assumption of truth."  <u>Iqbal</u>, 556 U.S. at 679.  Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  <u>Id.</u> at 678 (citing <u>Twombly</u>, 550 U.S. at 555).  Also, the Court need

not accept "legal conclusions cast as factual allegations" or "inferences drawn by [the] plaintiff if those inferences are not supported by the facts set out in the complaint[.]" Hettinga, 677 F.3d at 476.  Unlike when considering a motion to dismiss pursuant to Rule 12(b)(1), the Court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint[,] and matters of which [the Court] may take judicial notice."  Equal Emp't Opportunity Comm'n v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997).

### III.    ANALYSIS

The District moves to dismiss (1) the illegal hold claim asserted by one of the new plaintiffs—Montgomery;[7] and (2) the illegal strip search claims as to all plaintiffs.  See Defs.' Mot. at 2.  The Court will discuss each issue in turn.

### A.    Plaintiff Montgomery's Illegal Hold Claim

The District moves to dismiss plaintiff Montgomery's illegal hold claim, see Def.'s Mot. at 1, arguing that Montgomery was not held for longer than forty-eight hours on a Gerstein perfection hold and thus his "detention . . . does not run afoul of the Fourth Amendment[,]" Def.'s Mem. at 13.  Specifically, the District contests the plaintiffs' allegation as to when Montgomery's Gerstein perfection hold began, arguing that a docket sheet and transcripts from three hearings from Montgomery's criminal case (the "court records") reflect that the hold—

---

[7] In its motion, the District also sought the dismissal of the illegal hold claim asserted by plaintiff Kenion because she "was [only] held for a little over 38 hours" prior to a probable cause determination, which is less than 48 hours and thus entitled to a "presumption of constitutionality[.]"  Def.'s Mem. at 11.  Although the plaintiffs originally opposed the dismissal of Kenion's illegal hold claim, see Pls.' Opp'n at 11–13, on June 7, 2021, the plaintiffs subsequently filed a notice, representing that they "withdraw their opposition to the District's motion to the extent it moves to dismiss [ ] Kenion's" illegal hold claim.  Pls.' 1st Notice at 1.  The plaintiffs represented that they had based their allegations regarding Kenion in the Fourth Amended Complaint on information provided to them by the District in discovery, but "have now investigated and discovered that the time/date in the time[-]of[-]arrest field in the spreadsheet [provided to them] is a corrupted field" and therefore their original understanding of Kenion's time of arrest was incorrect.  Id. at 2.  Accordingly, in light of the plaintiffs' withdrawal of their opposition to the District's motion to dismiss Kenion's illegal hold claim, the Court will grant the District's motion to dismiss that claim.

which ended on December 18, 2012, see 4th Am. Compl. ¶ 137—did not begin until

December 17, 2012.[8]  See id.; see also Def.'s Mot., Exhibit ("Ex.") G (Dec. 7, 2012 Initial

Appearance Transcript ("Dec. 7, 2012 Tr.")); id., Ex. H (District of Columbia v. Montgomery

Docket Sheet ("Docket Sheet")); id., Ex. I (Dec. 17, 2012 Hearing Transcript ("Dec. 17, 2012

Tr.")); id., Ex. J (Dec. 18, 2012 Hearing Transcript ("Dec. 18, 2012 Tr.")).  The plaintiffs

respond that, regardless of whether the Court considers the court records, the Court should

nevertheless conclude that Montgomery's Gerstein perfection hold began on December 7, 2012,

see Pls.' Opp'n at 17–18, and, thus, he "was held for at least 273.6 hours from time of arrest [on

December 7, 2012,] to [the] probable cause determination[ on December 18, 2012,]" 4th Am.

Compl. ¶¶ 138.  Because—for the following reasons—the Court concludes that the court records

demonstrate that Montgomery's Gerstein perfection hold began on December 17, 2012, and that

the plaintiffs' arguments to the contrary are unavailing, the Court agrees with the District that

Montgomery was not detained pursuant to a Gerstein perfection hold for longer than forty-eight

hours and, accordingly, his claim must be dismissed.

1.  **Whether the Court Records Demonstrate When Montgomery's Gerstein Perfection Hold Began**

The Court begins by reviewing the court records to determine whether they demonstrate

when Montgomery's Gerstein perfection hold began.  At Montgomery's initial appearance on

---

[8] The plaintiffs argue that "any reference by the District to the transcripts [and docket sheet] that conflict[s] with the allegations in the Fourth Amended Complaint[, which are taken directly from] CourtView data exports [that the plaintiffs received from the District in the early stages of discovery in this case,] are references to 'matters outside the pleadings' and if the Court wishes to consider them it must convert the motion to a motion for summary judgment." Pls.' Opp'n at 15.  However, as the District correctly notes in response, see Def.'s Mem. at 3, the transcripts and docket sheet are court records, and "[t]he [C]ourt may take judicial notice of public records from other court proceedings[,]" Lewis v. Drug Enf't Admin., 777 F. Supp. 2d 151, 159 (D.D.C. 2011) (citing Covad Comm'ns. Co. v. Bell Atl. Corp., 407 F.3d 1220, 1222 (D.C. Cir. 2005)).  See generally Fed. R. Evid. 201. Moreover, the Court has previously relied on similar transcripts in this case.  See Lewis I at 59 (concluding that the allegation that "[t]he judicial officer held that the Gerstein [affidavit] did not establish probable cause" was "belied by the transcript of [the criminal] proceeding").  Accordingly, the Court will take judicial notice of the court transcripts and docket sheet attached by the District to its motion and will consider them in its resolution of the District's motion.

December 7, 2012, after the government had decided not to seek Montgomery's extradition to another jurisdiction, see Def.'s Mot., Ex. G (Dec. 7, 2012 Tr.) at 2:10–11 ("So the, the fugitive was no papered."), the Superior Court judge appointed an attorney, who remained in the courtroom after representing someone in a prior case, to represent Montgomery, see id., Ex. G (Dec. 7, 2012 Tr.) at 3:6–18 (appointing "Mr. Iverson" to serve as Montgomery's counsel and Iverson saying, "That's fine, I'll take this, Your Honor"). Then, the prosecutor provided the judge and defense counsel with a copy of the Gerstein affidavit as support for a probable cause finding and requested "a hold pursuant to [District of Columbia Code § 23-]1322(A)(1)(c)[.]" See id., Ex. G (Dec. 7, 2012 Tr.) at 4:7–20. Thereafter, the judge confirmed that Montgomery was charged with "driving under the influence" and without a permit, while being "[o]n probation for no[t having a] permit." Id., Ex. G (Dec. 7, 2012 Tr.) at 4:17–25. The judge then conducted the following exchange with defense counsel:

| | |
|---|---|
| THE COURT: | Okay. |
| MR. IVERSON: | Your Honor, we'd submit – as far as the no permit contention, we'd submit. |
| THE COURT: | Okay. Where does it go now? |

Id., Ex. G (Dec. 7, 2012 Tr.) at 5:2–4.

Following this exchange, defense counsel noted that, "as far as release[,]" he did not have Montgomery's probation documents and accordingly did not know "whether [Montgomery] was ordered[—]whether he was in any sort of court order on probation not to operate a vehicle." Id., Ex. G (Dec. 7, 2012 Tr.) at 5:6–16. In response, the prosecutor argued that Montgomery "would be in violation of his probation . . . if the Court f[ound] probable cause for this offense" and that Montgomery had prior no-permit convictions and "m[ight] not have had a valid permit since 1990." Id., Ex. G (Dec. 7, 2012 Tr.) at 5:18–5:24. The Court concluded that "it would be

disrespectful to assume that somebody . . . was so completely lacking in intelligence that if he'd been arrested and brought to court and charged with no permit, even if there wasn't an order that said he should not drive a car[,] it would be an insult to him to assume that he wasn't capable of figuring out that . . . [he] probably better get a permit before [he] dr[o]ve[,]" id., Ex. G (Dec. 7, 2012 Tr.) at 6:1–11, and "grant[ed] the government's request for] the hold[,]" id., Ex. G (Dec. 7, 2012 Tr.) at 6:11.  Finally, the judge, with both attorneys' agreement, scheduled a detention hearing for December 13, 2012.  See id., Ex. G (Dec. 7, 2012 Tr.) at 6:13–8:3.

During a subsequent hearing conducted on December 17, 2012, defects were identified in the Gerstein affidavit submitted by the prosecutor.  See generally id., Ex. I (Dec. 17, 2012 Tr.).  At that hearing—which had been delayed from December 13, 2012, to December 17, 2012, due to Montgomery's temporary hospitalization, see id., Ex. H (Docket Sheet) at 8—Montgomery's second defense counsel—Anthony Kay—argued that "the Gerstein [affidavit wa]s defective[,]" Def.'s Mot., Ex. I (Dec. 17, 2012 Tr.) at 4:1, because "it d[id ]n[o]t have the date and time of the alleged offense noted on it[,]" id., Ex. I (Dec. 17, 2012 Tr.) at 3:24–25.  After the judge asked the prosecutor whether there was "[a]ny problem with the 24 hours to perfect[,]" id., Ex. I (Dec. 17, 2012 Tr.) at 4:3–4, the prosecutor responded, "No problem," "concede[d] that there[ was] no date and time in the Gerstein" affidavit, and "request[ed] 24 hours to perfect the Gerstein[,]" id., Ex. I (Dec. 17, 2012 Tr.) at 4:5–7.  The judge granted the prosecutor's request and scheduled a hearing for the next day, December 18, 2012, see id., Ex. I (Dec. 17, 2012 Tr.) at 4:9–14.

The transcript of the hearing on December 18, 2012, reflects the perfection of the Gerstein affidavit.  See Def.'s Mot., Ex. J (Dec. 18, 2012 Tr.) at 1:2–3 (reflecting the deputy clerk calling the case as "[h]ere for 24-hour Gerstein perfection, Rollie Montgomery").  At this hearing, Montgomery's third defense counsel stated that the new copy of the Gerstein affidavit

was "fine" and Montgomery was "satisfied."  Id., Ex. J (Dec. 18, 2012 Tr.) at 1:8–10.  The judge

then conducted a colloquy with the defendant regarding a document concerning the waiver of a

detention hearing, which Montgomery signed.  See id., Ex. J (Dec. 18, 2012 Tr.) at 2:23–3:25.

Thereafter, the judge heard argument from the parties regarding Montgomery's detention and he

was released pending the next hearing in his case.  See id., Ex. J (Dec. 18, 2012 Tr.) at 4:1–12:2.

These court transcripts demonstrate that, contrary to the plaintiffs' allegations,

Montgomery's Gerstein perfection hold did not begin until the hearing on December 17, 2012,

when the judge granted the government's "request [for] 24 hours to perfect the Gerstein."  Id.,

Ex. I (Dec. 17, 2012 Tr.) 4:9–14.  Although Montgomery had his initial appearance on

December 7, 2012, and was detained until his next hearing on December 17, 2012, the transcript

of the December 7, 2012 hearing provides no indication that Montgomery had been detained

pursuant to a Gerstein perfection hold at that time.  See generally id., Ex. G (Dec. 7, 2012 Tr.).

The fact that Montgomery had not been subjected to a Gerstein perfection hold on

December 7, 2012, is supported by the absence of any discussion of a Gerstein perfection hold in

the December 7, 2012 transcript, and the explicit discussion in the transcript from the

December 17, 2012 hearing of Montgomery being detained pursuant to a Gerstein perfection

hold as of that date.  That discussion occurred after Montgomery's second defense counsel,

Anthony Kay, for the first time identified the defect in the Gerstein affidavit, resulting in the

following exchange:

> MR. KAY:   And so it doesn't have the date and time of the alleged offense noted on it.  And so I'd argue that the Gerstein is defective and for that reason the show-cause hearing should be dismissed.
>
> THE COURT:   Any problem with the 24 hours to perfect if –

| | |
|---|---|
| THE GOVERNMENT: | No problem, Your Honor. We -- will concede that there's no date and time in the <u>Gerstein</u>. We request 24 hours to perfect the <u>Gerstein</u>. |
| THE COURT: | Okay. |
| MR. KAY: | Very well.  Tomorrow, same time? |
| THE COURT: | Probably a little later.  Probably 11:30 because Tuesdays tend to be very crowded. |
| MR. KAY: | Very well.  Thank you. |
| THE DEPUTY CLERK: | Eleven-thirty tomorrow for a <u>Gerstein</u> perfection. |

<u>Id.</u>, Ex. I (Dec. 17, 2012 Tr.) at 3:24–4:14.  As this exchange demonstrates, when a judge orders a <u>Gerstein</u> perfection hold, he or she does so explicitly on the record.

The docket sheet further illustrates the documentation that is generated when a judge orders a <u>Gerstein</u> perfection hold.  The entry on the docket sheet for the December 17, 2012 hearing shows that the "[c]ase [was] continued for 24-hour <u>Gerstein</u> perfection" and that, on December 17, 2012, a hearing for the "24 Hour <u>Gerstein</u> Perfection" was scheduled for December 18, 2012, at 11:30 a.m.  <u>See id.</u>, Ex. H (Docket Sheet) at 7–8.  In contrast, the entries for the December 7, 2012 initial appearance do not mention the word "<u>Gerstein</u>[,]" instead stating only that the defendant "pled not g[ui]lty[,]" "asserted" his "trial rights[,]" and was "granted no bond[;]" and a "detention hearing" was scheduled for December 13, 2012.  <u>Id.</u>, Ex. H (Docket Sheet) at 8–9 (capitalization omitted).[9]  Accordingly, the Court concludes that the

---

[9] Even if the Court limited its analysis to just the allegations in the Fourth Amended Complaint, it would not conclude that Montgomery was held on a <u>Gerstein</u> perfection hold from December 7, 2012, to December 18, 2012. In the Fourth Amended Complaint, the plaintiffs allege that, at Montgomery's initial appearance on December 7, 2012, the government "submitted a <u>Gerstein</u> [affidavit] and asked the [j]udge . . . for a five[-]day '(a)(1)(A) hold,' that is, to order [ ] Montgomery held for a detention hearing pursuant to D.C. Code § 23-1322(a)(1)(A)[,] which is a discretionary hold" and, "[a]s a result, officers of the District of Columbia DOC transported [ ] Montgomery to the DC Jail." 4th Am. Compl. ¶ 131.  They further allege that, "[i]f the government seeks to hold [an] arrestee on a five[-]day hold . . .[,] the government must establish probable cause as a predicate[.]"  <u>Id.</u> ¶ 23.  Therefore, according to the plaintiffs' allegations, because Montgomery was held subject to a five-day hold, <u>see id.</u> ¶ 131, the

(continued . . .)

court records clearly demonstrate that Montgomery's <u>Gerstein</u> perfection hold began on

December 17, 2012, and ended on December 18, 2012, and, thus, in total, he was not held for

more than 24 hours on a <u>Gerstein</u> perfection hold.

**2. The Plaintiffs' Arguments that, Despite the Court Records, the Court Should Construe Montgomery's <u>Gerstein</u> Perfection Hold as Beginning on December 7, 2012**

Despite the clear contradiction of the plaintiffs' allegations that Montgomery's <u>Gerstein</u>

perfection hold began on December 7, 2012, the plaintiffs ask the Court to disregard the Superior

Court records because (1) the allegations regarding Montgomery's <u>Gerstein</u> perfection hold are

based on "the records in the CourtView data export" that were given to the plaintiffs by the

District in discovery in this case and are "the District['s] own records[,]" Pls.' Opp'n at 16, and

(2) Montgomery did not validly waive a finding of probable cause at the December 7, 2012

hearing and was unable to challenge the validity of the defective <u>Gerstein</u> affidavit until

December 17, 2012, due to alleged malfeasance by the Department of Corrections, <u>see id.</u> at 17–

19.

The Court begins with the plaintiffs' argument that the Court should accept their

allegations instead of the court records because their allegations stem from "the records in the

CourtView data export" that were produced by the District in discovery.  <u>See id.</u> at 16.  Even

accepting as true the plaintiffs' assertion that their allegations come from the District's discovery

production, <u>see id.</u>, the plaintiffs fail to present any argument as to why the Court should credit

the District's discovery-related documentation over the official court records.  <u>See generally</u> Pls.'

Opp'n.  Montgomery's illegal hold claim is based on actions taken by the Superior Court judge

---

(. . . continued)
government must have "establish[ed] probable cause as a predicate[,]" <u>id.</u> ¶ 23.  And, because probable case was established, Montgomery was not held on a Gerstein perfection hold because a <u>Gerstein</u> perfection hold only occurs when "the <u>Gerstein</u> [affidavit] does <u>not</u> establish probable cause."  <u>Id.</u> ¶ 30 (emphasis added).

in his criminal case, see 4th Am. Compl. ¶¶ 128–38, therefore, as the District correctly argues, "the best source of information about what occurred surrounding [Montgomery's] arrest and prosecution would be the actual documents and events underlying [his] criminal case[,]" Def.'s Reply at 5—i.e., the court records provided by the District.  And, importantly, the plaintiffs do not dispute that the court records are official court records from Montgomery's criminal case. See generally Pls.' Opp'n.  In light of the clear conflict between the court records and the plaintiffs' allegations, the Court cannot "accept as true [the Fourth Amended C]omplaint's factual allegations insofar as they contradict" the official court records that are "subject to judicial notice[,]" Kaempe v. Myers, 367 F.3d 958, 963 (D.C. Cir. 2004).

The Court now turns to the plaintiffs' argument that the Court should construe Montgomery's Gerstein perfection hold as beginning on December 7, 2012, because Montgomery did not waive a finding of probable cause and was unable to challenge the validity of the defective Gerstein affidavit until December 17, 2012.  See Pls.' Opp'n at 17–19. Specifically, they argue that such a finding would "only [be] fair[,]" id. at 17, because (1) the first attorney was appointed to represent Montgomery immediately before the December 7, 2012 hearing was convened and therefore did not have the opportunity to confer with Montgomery or "make a meaningful review of the Gerstein" affidavit prior to that hearing being conducted, id. at 17; (2) "Montgomery did not make a valid waiver of the defective Gerstein[ affidavit at the December 7, 2012 hearing,]" id. at 18; and (3) Montgomery did not have the opportunity to raise the defects in the Gerstein affidavit before the December 17, 2012 hearing because he was held without counsel by the Department of Corrections after his initial appearance on December 7, 2012, until December 17, 2012, see id. at 18–19.

15

It is undisputed that the Gerstein affidavit submitted by the prosecutor at the December 7, 2012 hearing was defective because it did not contain the date or time of the alleged offense. See Pls.' Opp'n at 17–18 ("Although no one caught it at [the December 7, 2012 hearing], the Gerstein [affidavit] did not establish probable cause because it did not state a date and time for the offense."); Def.'s Reply at 9 ("As explained at the December 17, 2012[,] hearing, defense counsel brought to the court's attention . . . that the Gerstein affidavit was missing the date and time of the alleged offense.").  Therefore, as the plaintiffs correctly note, see Pls.' Opp'n at 17–18, the finding of probable cause at the December 7, 2012 hearing was erroneous.

However, this error is irrelevant to Montgomery's illegal hold claim.  Montgomery's illegal hold claim does not allege that he was held from December 7, 2012, to December 18, 2012, based on an erroneous probable cause determination.  See 4th Am. Compl. ¶¶ 128–38. Rather, his claim—like the illegal hold claims of the other plaintiffs—alleges that (1) he was held for that time on a Gerstein perfection hold in order to allow the government time to perfect the Gerstein affidavit, see id. ¶ 2 (alleging that, "[e]ach of the [n]amed [p]laintiffs is a 'Gerstein perfection hold arrestee'" and therefore, "the Judge or Magistrate Judge at the prosecutor's request ordered the [n]amed [p]laintiff held pursuant to § 1322(a) on a 'Gerstein perfection hold'"), and thus (2) the District violated his Fourth Amendment rights due to its "policy or custom of holding Gerstein perfection hold arrestees more than 48 hours from time of arrest without providing a probable cause determination before a neutral magistrate[,]" id. ¶ 154. However, as discussed above, the court records demonstrate that Montgomery was not a "Gerstein perfection hold arrestee[ held for] more than 48 hours from time of arrest without providing a probable cause determination[,]" 4th Am. Compl. ¶ 154.  See Def.'s Mot., Ex. I (Dec. 17, 2012 Tr.) at 4:1–4:16; id., Ex. H (Docket Sheet) at 8; id., Ex. J (Dec. 18, 2012 Tr.)

at 1:8–1:10.[10]  Thus, he does not qualify as an illegal Gerstein hold detainee as alleged by the plaintiffs.

None of the plaintiffs' arguments—the judge's spontaneous appointment of counsel without time for counsel to confer with Montgomery and review the Gerstein affidavit; the allegedly invalid waiver of a finding of probable cause; and Montgomery's detention pending the December 18, 2012 hearing—undermine the fact, based on the court records, that Montgomery's Gerstein perfection hold began on December 17, 2012, not December 7, 2012.[11]  Moreover, there are no allegations in the Fourth Amended Complaint to support an inference that, in the event that the judge and the government were alerted to the defect in the Gerstein affidavit earlier than December 17, 2012, Montgomery would have been held pursuant to the Gerstein perfection hold for longer than 48 hours.  See generally 4th Am. Compl.  Accordingly, the plaintiffs' argument does not undermine the Court's conclusion that the court records demonstrate that Montgomery's Gerstein perfection hold began on December 17, 2012, and lasted less than forty-eight hours.

Maintaining its conclusion that Montgomery's Gerstein perfection hold began on December 17, 2012, and ended on December 18, 2012, the Court will grant the District's motion as to Montgomery's illegal hold claim and dismiss that claim.[12]

---

[10] To the extent that the plaintiffs argue that the Court should construe the Gerstein perfection hold as beginning on December 7, 2012, because the probable cause determination made by the judge on December 7, 2012, was erroneous, see, e.g., Pls.' Opp'n at 18 (arguing that "the lack of probable cause existed from [December 7, 2012,] when the District through its [police officers] and its [prosecutors] presented a defective Gerstein [affidavit] to the court in support of a five[-]day hold"), they offer no authority to support this argument, see generally Pls.' Opp'n.

[11] The Court's conclusion that Montgomery failed to adequately allege that he was held on a Gerstein perfection hold for longer than 48 hours should not be construed to offer any opinion as to the viability of a potential claim by Montgomery regarding the judge's erroneous probable cause determination.

[12] At the January 10, 2022 hearing, the plaintiffs' counsel argued for the first time that plaintiff Montgomery would suffer prejudice from the dismissal of his illegal hold claim.  Following the hearing, the Court directed the plaintiffs' counsel to file a submission regarding this argument, see Order at 1 (Jan. 12, 2021), which the plaintiffs filed on

(continued . . .)

B.      **The Plaintiffs' Illegal Strip Search Claims**

The Court now turns to the plaintiffs' illegal strip search claims.  As to these claims, the plaintiffs allege that the "District [ ] strip-searched the . . . plaintiffs . . .pursuant to the [Department of Corrections'] official indiscriminate blanket strip-search policy for intakes at the DC Jail[,]" id. ¶ 166, "even though they were Gerstein perfection hold arrestees who met the requirements of the Florence exception[,]" id. ¶ 169.  The District seeks to dismiss these claims, raising two arguments.  First, the District argues that the exception only applies to "arrestee[s] whose detention has not been reviewed by a judicial officer[,]" Def.'s Mem. at 14 (quoting Florence, 566 U.S. at 341) (emphasis added), whereas "here, all plaintiffs appeared before a judge prior to being ordered held at the D[]C[] Jail" and therefore "their detention was ordered by a judicial officer who determined [that] a 24-hour Gerstein perfection hold was appropriate[,]" id.  Second, the District argues that the plaintiffs were not able to "be held in available facilities apart from the general population[]" id., as the Florence exception requires, because, for each plaintiff, "a Superior Court judge [ ] ordered that [they] be held at the D[]C[] Jail following an initial appearance[,]" id. at 15.  In response, the plaintiffs argue that (1) the District's arguments either have been or should have been raised previously, see Pls.' Opp'n at 20; and (2) the plaintiffs "plausibly alleged that [they] satisf[y] the three elements of the Florence exception: ([a]) they were arrested on minor charges; ([b]) they did not receive a probable cause determination before being held for a Gerstein perfection hold; and ([c]) they were placed in the DC Jail or CTF instead of elsewhere such as [the] Central Cell Block where they could have been held outside of the general population of the DC Jail[.]"  Pls.' Opp'n at 21.  For the

---

(. . . continued)
January 14, 2022, see Pls.' 2d Notice at 1.  In the submission, the "[p]laintiffs' counsel [ ] withdr[e]w any argument based on prejudice made regarding [the] dismissal of [ ] Montgomery's" illegal hold claim.  Id.  Accordingly, the Court need not consider the prejudice argument raised by the plaintiffs' counsel at the January 10, 2022 hearing.

following reasons, the Court concludes that this issue is controlled by a prior legal conclusion

reached in this case and, therefore, it must deny the District's motion to dismiss the plaintiffs'

illegal strip search claims.

> In <u>Lewis I</u>, the Court concluded:

> In the present case, the plaintiffs allege that the judicial officer had made a finding
> of no probable cause,[] and there were other readily available facilities removed
> from the general population of the DC Jail in which [the plaintiffs] could have
> been held.    Accordingly,  the  plaintiffs'  allegations  fall  squarely  within
> circumstances not resolved by the Supreme Court in <u>Florence</u>.

<u>Lewis I</u>, 195 F. Supp. 3d at 64–65.  Although the Court noted that that it "question[ed] the

[plaintiffs'] characterization of the judicial officer's rulings[ as being findings of no probable

cause], [because] the transcripts of the plaintiffs' detention hearings indicate that the [ ] [j]udge

merely deferred any ruling on the existence of probable cause[,]" it concluded that "it is apparent

from the transcripts that no affirmative findings of probable cause were made during the

plaintiffs' initial appearances."  <u>Id.</u> at 64 n.8.

In other words, there is a prior ruling from this Court in this case holding that allegations

that (1) there was "no affirmative finding[] of probable cause" made prior to a <u>Gerstein</u>

perfection hold, <u>see</u> <u>id.</u>, and (2) there are "other readily available facilities removed from the

general population of the DC Jail in which [the plaintiffs] could have been held" "fall squarely

within circumstances not resolved by the Supreme Court in <u>Florence</u>[,]" <u>id.</u> at 65.  This is now

the law of the case.  <u>See</u> <u>Gregory-Rivas v. District of Columbia</u>, 577 F. Supp. 2d 4, 8 n.3 (D.D.C.

2008) (defining the "law of the case" as "questions decided (<u>i.e.</u>, established as the law of the

case) by that court or a higher one in earlier phases[ of the same litigation]" (underline added)).

In their Fourth Amended Complaint, the plaintiffs make these exact allegations, asserting that

"they did not receive a probable cause determination before being held for a <u>Gerstein</u> perfection

hold" and "they were placed in the DC Jail or CTF instead of elsewhere such as [the] Central Cell Block where they could have been held outside of the general population of the DC Jail or CTF."  4th Am. Compl. ¶ 11; see also id. ¶ 154 ("The District . . . held the Illegal Hold Named Plaintiffs and Class . . . without providing a probable cause determination before a neutral magistrate"); id. ¶ 164 ("Each of the Illegal Strip Search Named Plaintiffs and Class could have been held in an area outside the general population of the DC Jail or CTF.").  Because "the same issue presented a second time in the same case in the same court should lead to the same result[,]" LaShawn A. v. Barry, 87 F.3d 1389, 1393 (D.C. Cir. 1996) (en banc) (emphasis in original), the plaintiffs' allegations suffice to plausibly allege that they fall under the Florence exception, see Lewis I, 195 F. Supp. 3d at 64–65.  Moreover, although the "law-of-the-case may be revisited [ ] if there is an intervening change in the law or if the previous decision was clearly erroneous and would work a manifest injustice[,]" Kimberlin v. Quinlin, 199 F.3d 496, 500 (D.C. Cir. 1999) (internal quotation marks omitted), the District has made no such argument here, see generally Def.'s Mem.; Def.'s Reply.

For the above reasons, the Court will deny the District's motion to dismiss the plaintiffs' illegal strip search claims.

## IV.    CONCLUSION

For the foregoing reasons, the Court concludes that it must (1) grant the District's motion to dismiss Kenion's and Montgomery's illegal hold claims, but (2) deny the District's motion to dismiss the plaintiffs' illegal strip search claims.

**SO ORDERED** this 17th day of May, 2022.[13]

REGGIE B. WALTON
United States District Judge

---

[13] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.